Manuel A. Rivera, demandante y recurrido, *v.* Samaritano & Co., Inc., peticionaria.

*Número:* O-77-375 *Resuelto:* 29 de marzo de 1979

*Mario Canales Delgado,* abogado de la peticionaria; *César A. Hernández Colón* y *Fernando Barnes Vélez,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

█ Con frecuencia surgen conflictos que pueden ser fácilmente dirimidos por la aplicación de principios generales de derecho, pero que se demoran en el trámite y disposición final del caso porque una de las partes honestamente sigue un enfoque equivocado. Tal es el caso que hoy confrontamos. El principio de derecho que dispone del mismo es uno fundamental en el derecho de obligaciones y aparece preceptuado en el Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994, al efecto de que el contrato tiene fuerza de ley entre las partes contratantes. [1]

Se trata de la impugnación de un laudo de arbitraje sobre la interpretación de varias cláusulas de un contrato de construcción a la luz de los motivos de revocación establecidos por la Ley de Arbitraje Comercial, Núm. 376 de 8 de mayo de 1951, 32 L.P.R.A. sec. 3222. [2]

---

[1] El Art. 1044 lee:

"Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos."

[2] El Art. 22 de la ley que regula los convenios de arbitraje comercial lee:

"En cualquiera de los casos siguientes el tribunal podrá a solicitud de cualquiera de las partes y previo aviso y vista dictar orden revocando el laudo:

El peticionario Samaritano & Co., Inc., solicitó en instancia la desestimación de la demanda de impugnación de laudo instada por el recurrido Manuel A. Rivera fundándose en que el tribunal no tenía facultad para determinar si el laudo se adjudicó conforme a derecho ya que el Art. 22 de la ley que regula los convenios de arbitraje comercial, *supra*, preceptúa los motivos de revocación de un laudo y no incluye entre ellos el error de derecho. Sostiene el peticionario que ello es así aun cuando en el Pacto de Sumisión las partes hayan acordado que los asuntos sometidos a arbitraje se resolverán "con arreglo a derecho" pues es preciso atenerse al texto del mencionado Art. 22 que limita la revisión judicial a los motivos de revocación allí señalados. Es decir, que la voluntad de las partes libremente expresadas en el Pacto de Sumisión es superflua, ineficaz y carente de fuerza vinculante. Por supuesto, el tribunal de instancia no admitió el argumento, y, en consecuencia, denegó la desestimación de la demanda y se reservó la facultad de considerar los méritos jurídicos del laudo para darle así vigencia a la propia voluntad de las partes.

 Es cierto que no se trata aquí de un arbitraje obrero-patronal regido por normas jurisprudenciales, según la doctrina establecida en *Junta* v. *New York & Puerto Rico Steamship Co.*, 69 D.P.R. 782 (1949), sino de un arbitraje

"(a) Cuando se obtuvo mediante corrupción, fraude u otro medio indebido.

"(b) Cuando hubo parcialidad o corrupción evidente de los árbitros o cualquiera de ellos.

"(c) Cuando los árbitros actuaren erróneamente al rehusar posponer la vista luego de mostrarse causa justificada para ello, o al rehusar oir evidencia pertinente y material a la controversia, o cuando incurrieren en cualquier error que perjudique los derechos de cualquiera de las partes.

"(d) Cuando los árbitros se extendieren en sus funciones o cuando el laudo emitido no resolviera en forma final y definitiva la controversia sometida.

"(e) Si no hubo sumisión o convenio de arbitraje y el procedimiento se inició sin diligenciar la notificación de intención de arbitrar . . . ."

comercial regulado por la Ley Núm. 376 de 8 de mayo de 1951, *supra*. Pero tal distinción en la fuente de reglamentación no altera la común naturaleza contractual de ambas instituciones. Tanto el arbitraje obrero-patronal como el comercial surgen de un convenio y, en uno y en otro, los árbitros vienen obligados a respetarlo. En su defecto, queda franca la vía judicial para dar vigencia a la voluntad de las partes.

El arbitraje convencional estuvo en sus orígenes regulado por los Arts. 1719 y 1720 del Código Civil, 31 L.P.R.A. secs. 4841 y 4842, aunque en forma muy sobria porque dichos artículos remitían el contrato de compromiso al capítulo del mismo Código relativo al régimen de los contratos de transacción, 31 L.P.R.A. secs. 4821–4830; [3] y en cuanto al modo de proceder y a la extensión y efectos de estos a la Ley de Enjuiciamiento Civil, Arts. 204–211, Código de Enjuiciamiento Civil de 1933 (derogados por Regla 72 de las de Procedimiento Civil, 1958).

Un ilustre procesalista español denomina el arbitraje como un contrato de solución o de liquidación propiamente regulado en España en el libro IV del Código Civil dedicado a las obligaciones y contratos. Guasp, Ignacio: *El Arbitraje en el Derecho Español*, pág. 27.

El derecho común anglo-americano también considera el arbitraje de naturaleza contractual. Eager, Samuel: *The Arbitration Contract & Proceedings*, pág. 3 (Dennis & Co. Inc. Buffalo, N.Y., 1971); Mentschikoff, Soia: *The Significance of Arbitration—A Preliminary Inquiry*, 17 Law & Contemp. Prob., 698.

---

[3] Los Arts. 1719 y 1720 disponen:

Artículo 1719: "Las mismas personas que pueden transigir pueden comprometer en un tercero la decisión de sus contiendas." 31 L.P.R.A. sec. 4841.

Artículo 1720: "Lo dispuesto en el capítulo anterior sobre transacciones es aplicable a los compromisos.

"En cuanto al modo de proceder en los compromisos y a la extensión y efectos de estos, se estará a lo que determina la Ley de Enjuiciamiento Civil." 31 L.P.R.A. sec. 4842.

■ El arbitraje puede surgir de una cláusula accesoria a un contrato principal mediante la cual las partes acuerdan someter a arbitraje sus desavenencias futuras o puede surgir de un convenio por escrito para resolver una controversia existente. La Ley Núm. 376 cubre ambas situaciones. Art. I, 32 L.P.R.A. sec. 3201. (⁴) Las partes tienen amplia libertad para incorporar en el convenio de sumisión las cualificaciones que consideren propias al caso y el árbitro viene obligado a darles cumplimiento. El convenio de sumisión es el que confiere la facultad decisional al árbitro y delimita su esfera de acción; siendo nulo el laudo si se excede de los poderes delegados en dicho convenio de sumisión.

■ Es por eso que si la sumisión dispone, como en este caso, que los asuntos sometidos a arbitraje sean resueltos con arreglo a derecho, el tribunal tiene facultad para revisar los méritos jurídicos del laudo. Esta es la doctrina establecida en *Junta* v. *N.Y. & P.R. S/S. Co.*, supra, y que prevalece en las diversas jurisdicciones. Phillips, *Rules of Law in Arbitration*, 47 Harv. L. Rev. 590, 603; *Some Problems Relating to Enforcement of Arbitration Awards Under the New California Arbitration Act*, Comentarios, U.C.L.A. L. Rev. 422, 446; *Judicial Review of Arbitration Awards on the Merits*, 63 Harv. L. Rev. 688, 6 C.J.S. Arbitration sec. 108, 154; Eager, *op. cit.*, supra, a la pág. 288.

El argumento del peticionario de que la facultad decisional del árbitro no está limitada por la condición de que el laudo sea con arreglo a derecho no es atendible porque niega

---

(⁴) El Art. I, lee:

"Dos o más partes podrán convenir por escrito en someter a arbitraje de conformidad con las disposiciones de este Capítulo, cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. Tal convenio será válido, exigible, e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio."

la fuerza vinculante del convenio de sumisión y hace ineficaz la voluntad de las partes. *Autoridad sobre Hogares* v. *Tribunal Superior*, 82 D.P.R. 344 (1961), no favorece su posición porque la sumisión en dicho caso no fue cualificada, como lo ha sido en el.de autos, y, además, porque allí seguimos la norma adoptada en *Junta* v. *N.Y. & P.R. S/S. Co.*, supra, que le es completamente adversa, según puede verse a continuación:

"La situación sería diferente si el convenio colectivo o la sumisión a arbitraje hubieran provisto que el Comité de arbitraje deberá decidir las cuestiones sometídasle de acuerdo a derecho. Cuando las partes así lo disponen, los árbitros deben seguir las reglas de derecho, y rendir sus laudos a tenor con las doctrinas legales prevalecientes. Si el convenio de arbitraje nada dice en cuanto a esto, de conformidad con la Ley Común y bajo la mayoría de las leyes de arbitraje, los árbitros pueden declarar cuál es la ley, y ningún laudo será anulado a causa de sus errores de derecho. (Citas.) Una de las primeras autoridades sobre arbitraje es de la creencia que este sería más efectivo si las cortes pudieran revisar los laudos sobre cuestiones de derecho sustantivo. Pero en ausencia de una disposición en tal sentido en el convenio de arbitraje o en un estatuto, el· árbitro tiene autoridad para hacer caso omiso de las reglas de derecho sustantivo."

■ No obstante, aun cuando fuere permisible en este caso la revisión de los méritos jurídicos del laudo, el tribunal de instancia no debe inclinarse fácilmente a decretar la nulidad del laudo a menos que efectivamente el mismo no haya resuelto la controversia con arreglo a derecho, según lo pactaran las partes. *Cf. Ríos* v. *Puerto Rico Cement Corp.*, 66 D.P.R. 470 (1946). Debe tenerse presente que una discrepancia de criterio con el laudo no justifica la intervención judicial pues destruye los propósitos fundamentales del arbitraje de resolver las controversias rápidamente, sin los costos y demoras del proceso judicial.

*Se dictará sentencia devolviendo el caso al tribunal de instancia para que se continúen los procedimientos sobre la impugnación del laudo.*

El Juez Asociado Señor Martín concurre sin opinión. El Juez Asociado Señor Díaz Cruz emitió voto disidente.

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 29 de marzo de 1979

Este caso ameritaba una pronta adjudicación sobre la premisa de la *finalidad* del arbitraje contractual. Dicha solución a tenor de la Regla 50 se fortalece con la realidad revelada por examen de los autos de que el laudo no adolece de *error de derecho* por lo que no existe base para que la sala de instancia altere la decisión de los árbitros. Mas la acción de la mayoría en gesto fútil, devolviendo a instancia, prolonga la litigación y pospone innecesariamente la decisión final. No creo que haya equidad ni justicia en esta manera de resolver. Obliga a una parte que tiene dos veces razón: (1) en la finalidad contractual del arbitraje; y (2) en los méritos adjudicados por el laudo, a continuar un litigio a manera de un segundo día en corte para el inconforme con el arbitraje al que se sometió de su libérrima voluntad, y hasta invita a un fracaso de justicia si el juez de instancia encuentra "error de derecho" en el laudo.

Aun en derecho laboral, donde la susceptibilidad del arbitraje a errores de derecho es de grado mayor que en el arbitraje contractual, se ha sostenido y promulgado la siguiente doctrina: (1) la función del tribunal se limita a "determinar si la parte que acudió al arbitraje plantea una reclamación que de su faz está regulada por el contrato." (*United Steelworkers* v. *American Mfg. Co.*, 363 U.S. 564, 568 (1960)); (2) las dudas respecto al ámbito de la cláusula de arbitraje deben resolverse en favor del arbitraje. (*United Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960)); (3) el laudo arbitral, aun cuando debe descansar en el pacto de las partes, debe ponerse en vigor por los tribunales aun

cuando la interpretación del contrato en aquél difiera del criterio del tribunal o sea ambigua. (*United Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).) El Supremo de los Estados Unidos funda esta deferencia al arbitraje tanto en el historial legislativo como en el texto del estatuto. El resultado final de estos desarrollos nos ha traído a la decisión de la mayoría de conflictos entre el árbitro y las cortes en favor del arbitraje. *The Developing Labor Law*, Morris, Editor (1971), pág. 482.

Planteada la nulidad del laudo basada en la alegada consideración de prueba inadmisible en derecho por parte de los árbitros, el Tribunal Supremo de los Estados Unidos resolvió en *Burchell* v. *Marsh*, 17 How. 344 (1855), que los árbitros son jueces seleccionados libremente por las partes para decidir las controversias sometídales. Como método para transigir diferencias el arbitraje debe ser alentado por los tribunales y si el laudo está dentro de los límites de la sumisión, y contiene la decisión honrada de los árbitros luego de oír a las partes, no debe ser echado a un lado por el tribunal por meras diferencias de criterio en cuanto al resultado final sobre errores de hecho o derecho. Lo contrario sería considerar el arbitraje como el principio de la litigación en vez del final.

La revisión de un laudo de arbitraje convencional no debe proceder automáticamente por haber las partes pactado que el mismo se daría "conforme a derecho". Tal práctica desnaturalizaría y derrotaría la eficacia del arbitraje como instrumento preferente para la decisión de controversias. Confrontada la sala de instancia en este caso con una moción sobre falta de jurisdicción, el tribunal debe hacer lo que hemos hecho en revisión: evaluar la sustancialidad del alegado "error de derecho" y únicamente de estar convencido de que existe cuestión justiciable, asumir jurisdicción y entrar en los méritos de la controversia. Si dicha evaluación previa sólo demuestra que la parte perdidosa en el laudo lo que pretende es relitigar en foro judicial lo que ya fue adjudicado en el

foro de arbitraje, procede acoger la moción declinatoria y declararse sin jurisdicción.

· Hacer depender la revisión judicial del laudo de que éste se emita dentro de un convenio de sumisión que dispone procedimientos "conforme a derecho", es un artificio. Todo arbitraje contractual debe sujetarse a derecho y de haber un señalado perjuicio o lesión a una parte en la conducción irregular de los procedimientos no creo que pueda cerrarse el foro judicial porque no se insertó la frase mágica. A estas alturas no vamos a encerrar la justicia en fórmulas de farmacia. Los resultados contrarios a ley, moral u orden público no pueden subsistir en ningún área de nuestro derecho positivo. Nuestra propia Ley de Arbitraje provee sobre el particular facultando al tribunal a revocar el laudo cuando los árbitros ". . . incurrieren en cualquier *error que perjudique* los derechos de cualquiera de las partes." 32 L.P.R.A. sec. 3222(c). (Énfasis nuestro.)

La previa determinación de cuestión sustancial digna de revisión judicial, y no el automatismo de unas palabras, es lo que debe dirigir la discreción judicial en la decisión de asumir o no jurisdicción para conocer de la controversia ya adjudicada por el árbitro. Considero que cualquier precedente en contrario a esta solución, por su evidente fragilidad en lo que respecta al *arbitraje contractual*, no debe obligarnos.