# 2004 DTA 128

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL IV**

HERMANDAD DE EMPLEADOS DE OFICINA, COMERCIO Y
RAMAS ANEXAS DE PUERTO RICO
Peticionaria

v.

AUTORIDAD DE LOS PUERTOS
Recurrida

Núm. KLCE-03-01527

San Juan, Puerto Rico, a 9 de agosto de 2004

Panel integrado por su Presidente, el Juez Gierbolini, y
los Jueces Cordero y Rodríguez Muñiz

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Oportunamente, la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas ("*Hermandad*") presentó ante este Tribunal una Petición de *Certiorari* en la que nos solicitó la revisión de la Sentencia emitida el 18 de septiembre de 2003, notificada el 3 de noviembre de 2003, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("*TPI*"), mediante la cual se confirmó un laudo de arbitraje en el que se declaró que el despido de Gabriel Durán ("*Durán*") estuvo justificado.

Durán ocupaba un puesto en la Autoridad en calidad de vigilante en la Torre del Vigía. Allá para el 14 de mayo de 1991, le fue informado al Director Ejecutivo de la Autoridad que Durán arrojó positivo al uso de sustancias controladas. Durán fue referido el 24 de junio de 1991 a un Programa de Orientación y Tratamiento a Servidores Públicos de San Juan; no obstante, y debido a que éste no evidenció un desempeño positivo en el referido programa, fue dado de baja del mismo el 1ro de octubre de 1991. Luego, el 24 de febrero de 1992, Durán fue destituido de su cargo por el Director Ejecutivo por infringir el Reglamento del Programa Permanente para la Detección de Sustancias Controladas en Funcionarios y Empleados de la Autoridad de los Puertos. Sin embargo, éste fue repuesto el 2 de septiembre de 1992. ■

El 1ro de febrero de 2003, le fue realizada a Durán una prueba de detección de sustancias controladas en la cual arrojó un resultado positivo a marihuana. La referida prueba se llevó a cabo, ya que una empleada de la Autoridad reportó haber encontrado un cigarrillo de marihuana en el puesto de trabajo que ocupaba Durán. El 24 de febrero de 2003, Durán fue encontrado incurso en la violación al Artículo XLIII, Sección 11, el cual tipifica el trabajar en aparente estado de embriaguez o drogas como una de las causales que conllevan a separación o suspensión sumaria. A su vez, la Autoridad le notificó la formulación de cargos y su intención de destituirlo luego de que ésta fuera refrendada por un árbitro.

La vista de arbitraje fue llevada a cabo el 11 de abril de 2003 ante la árbitro Maité Alcantará Mañana del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico. Al no ponerse las partes de acuerdo con el proyecto de sumisión, la árbitro determinó la sumisión de la siguiente manera:

*"Que la Árbitro determine, conforme a derecho, el Convenio Colectivo aplicable, y la prueba desfilada, si el despido del querellante, Gabriel Durán, estuvo o no justificado. De no estarlo, que provea el remedio adecuado."*

El 8 de mayo de 2003, la árbitro emitió su laudo resolviendo que el despido de Durán estuvo justificado. La árbitro señaló que el convenio establece en su Artículo XLIII, sección 11, que un empleado que trabaje en aparente estado de embriaguez o uso de drogas, estará sujeto a la sanción disciplinaria, según estime conveniente la Autoridad. Procedió la árbitro a señalar que el Reglamento de Personal dispone que en el caso de que se trate de un empleado reincidente, la Autoridad no tendría que cumplir con el requisito de enviarlo a tratamiento. La árbitro determinó que *"el hecho de que en aquella ocasión la Autoridad repusiera en su puesto al querellante, de conformidad con el Procedimiento de Detención de Sustancias Controladas, no implica que se omita el hecho de que el empleado resultara positivo en la prueba de dopaje"*; añadió que *"aunque hubiese sido la primera falta incurrida por éste, el Artículo XI, del Reglamento dispone que se impondrán sanciones disciplinarias, conforme al Convenio Colectivo, a todo empleado que por primera o segunda vez, de positivo a drogas en un examen de dopaje. Y, según dispuesto en el Convenio, en su Artículo XLIII, sobre suspensiones sumarias y perentorias, tales medidas disciplinarias podrían ir desde la separación permanente, hasta aquellas medidas que la Autoridad estime pertinente. En el presente caso, la penalidad impuesta es el despido."*

Inconforme con la decisión de la árbitro, la Hermandad presentó oportunamente una solicitud de revisión ante el TPI. La Hermandad planteó ante el foro recurrido que erró la árbitro al determinar que el despido de Durán estuvo justificado. En resumen, la Hermandad cuestionó la apreciación de la prueba y la interpretación del Convenio Colectivo realizada por la árbitro. La Hermandad señaló que ésta incurrió en un error de derecho y que se excedió de su jurisdicción al dirigir su análisis a determinar si Durán era o no reincidente en el uso de sustancias controladas. A su vez, indicó que el primer incidente en el cual el empleado resultó positivo a drogas y recibió tratamiento, no podía ser tomado en consideración para imponerle un despido o establecer una determinación de reincidencia.

Por su parte, la Autoridad se opuso a la solicitud de revisión. La Autoridad apuntó a que, según el Convenio

entre las partes, ésta retuvo el control exclusivo de todos los asuntos concernientes a la operación y manejo de la empresa. La Autoridad indicó que la árbitro actuó de conformidad y dentro del marco de acción que le fue conferido y el convenio suscrito entre las partes. La Autoridad señaló que al suscribir el convenio las partes negociaron un nuevo Reglamento para la Detección de Sustancias Controladas en el cual se establece en su Artículo VI, inciso 1, que está terminante prohibido la posesión y consumo de alcohol y sustancias controladas por parte de los empleados de la Autoridad en los predios pertenecientes a ésta o en las áreas de trabajo. La Autoridad indicó que no hay duda que Durán arrojó un primer resultado positivo a marihuana para el 1991 y un segundo resultado el 1ro de febrero de 2003. La Autoridad arguyó que *"el hecho de que la primera medida disciplinaria impuesta al querellante en el año 1991 fuese dejada sin efecto, no implica que la Autoridad venga obligada a obviar dicho resultado positivo al momento de imponer una nueva medida disciplinaria como resultado de un nuevo resultado positivo al uso de sustancias controladas. Evidentemente, el querellante era reincidente en el uso de sustancias controladas según lo determinara la Honorable Árbitro al emitir su laudo."* La Autoridad sostuvo que la árbitro actuó correctamente, por lo que el laudo debía ser confirmado. ■

Finalmente, el 18 de septiembre de 2003, notificada el 3 de noviembre de 2003, el TPI dictó Sentencia confirmando el laudo de arbitraje al concluir que el laudo no adolece de las causas de impugnación establecidas por la jurisprudencia.

Discorde con la Sentencia emitida, la Hermandad comparece ante nos y señaló que erró el TPI al determinar que la árbitro no incurrió en error de derecho y que no se excedió en su jurisdicción al determinar como justificado el despido de Durán.

## II
En nuestra jurisdicción existe una vigorosa política pública a favor del arbitraje. En lo que respecta a la autoridad del árbitro para entender en una controversia, ésta queda definida por la cláusula de arbitraje convenida, así como por el acuerdo de sumisión sometido por las partes, amén de aquella autoridad que pueda serle conferida para confeccionar el remedio que corresponda. Se constituye, pues, dicho acuerdo, en definitorio de los asuntos a ser decididos y es lo que controla, junto con las disposiciones aplicables del convenio colectivo, el ámbito de autoridad del árbitro o panel de arbitraje seleccionado por las partes con tal finalidad.

La principal función del árbitro en el proceso de arbitraje es la interpretación de las cláusulas del convenio colectivo. El margen de interpretación del árbitro dependerá de la claridad del lenguaje utilizado en el convenio colectivo. Aun cuando el lenguaje aparenta ser claro, puede que admita interpretaciones conflictivas, en cuyo caso, el árbitro tiene flexibilidad para hacer su interpretación. *J.R.T. v. National Packing Co.,* 112 D.P.R. 162, 166-167 (1982).

A través del arbitraje, se pretende promover la resolución de las querellas y controversias que se suscitan dentro del marco obrero-patronal, habiéndose reconocido que el arbitraje pactado en el convenio constituye una herramienta ideal para fortalecer la negociación colectiva, *J.R.T. v. Junta Adm. Muelle Mun. Ponce,* 122 D.P.R. 318, 330 (1988); *Pérez v. Autoridad Fuentes Fluviales,* 87 D.P.R. 118, 124 (1963). En *J.R.T. v. Corp. de Crédito,* 124 D.P.R. 846, 849-850 (1989), el Tribunal Supremo expuso sobre la doctrina que gobierna la revisión judicial de los laudos de arbitraje como sigue:

*"La trayectoria de nuestras decisiones en materia de arbitraje obrero-patronal se caracteriza por una marcada deferencia hacia los laudos de arbitraje. En consonancia con este principio, hemos reiterado que un laudo fundamentado en la sumisión voluntaria de las partes está sujeto a revisión judicial sólo si las partes convienen en que la controversia sometida al árbitro sea resuelta conforme a derecho. (Citas omitidas.) En ausencia de disposición expresa a esos efectos, un laudo sólo puede ser impugnado si se demuestra la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión en resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política*

*pública."*

Resulta apropiado señalar que la experiencia en las últimas décadas ha demostrado que el arbitraje es un mecanismo que tiende a mantener la estabilidad y la paz industrial, propósitos cardinales de nuestras leyes laborales, *S.I.U. de P.R. v. Otis Elevator Co.,* 105 D.P.R. 832, 836 (1977); *Pagán v. Fund. Hosp. Dr. Pila,* 114 D. P.R. 224, 231 (1983); *U.I.L. de Ponce v. Dest. Serrallés, Inc.,* 116 D.P.R. 348, 353-354 (1985); *J.R.T. v. Hato Rey Psychiatric Hosp.,* 119 D.P.R. 62, 68 (1987); *J.R.T. v. Junta Adm. Muelle Mun. de Ponce, supra,* a la pág. 325; siendo la norma de revisión de dichos laudos una de autorestricción o abstención judicial. *Colón Molinary v. A.A. A.,* 103 D.P.R. 143, 155 (1974); *J.R.T. v. National Packing Co., supra,* a la pág. 165; *U.I.L. de Ponce v. Dest. Serrallés, Inc., supra,* a là pág. 353; *J.R.T. v. Hato Rey Psychiatric Hosp., supra,* a la pág. 67.

Si el laudo no es conforme a derecho, será sostenido por el tribunal, aun cuando éste hubiese llegado a una conclusión distinta. Los árbitros tienen amplia discreción para diseñar un remedio adecuado al laudo. Tan es así que inclusive los árbitros pueden variar una sanción disciplinaria si consideran que la misma es muy severa o drástica. *S.I.U. de P.R. v. Otis Elevator Co., supra,* a la pág. 841. En ausencia de disposición expresa de que el laudo sea conforme a derecho, éste puede impugnarse sólo si se demuestra la existencia de fraude, conducta impropia del árbitro, falta del debido procedimiento de ley, ausencia de jurisdicción, que el laudo no resuelve todas las cuestiones en controversia que se sometieron o violación de la política pública. *SIU de P.R. v. Otis Elevator, supra,* a la pág. 836; *Sonic Knitting Industries v. I.L.G.W.U.,* 106 D.P.R. 557, 580 (1977); *J.R.T. v. Hato Rey Psychiatric Hosp., supra,* a las págs. 67-68 (1987).

Lo antes expresado responde a que las partes, una vez firman un convenio colectivo donde someten sus disputas obrero-patronales a un procedimiento de arbitraje, sustituyen al árbitro por las cortes para resolver estas disputas. *U.G.T. v. Challenger Caribbean Corp.,* 126 D.P.R. 22, 29 (1990); *J.R.T. v. N.Y. & P.R. S/S, supra,* a las págs. 800-801 (1949).

Sin embargo, aun cuando la norma general postula la autorestricción o abstención judicial, un laudo de arbitraje podrá ser revisado si el convenio colectivo o el acuerdo de sumisión suscrito por las partes dispone que el laudo deberá ser emitido conforme a derecho. *Autoridad sobre Hogares v. Tribl. Superior,* 82 D.P.R. 344, 354 (1961); *Colón Molinary v. A.A.A., supra,* a la pág. 155; *S.I.U. de P.R. v. Otis Elevator Co., supra,* a la pág. 837; *J. R.T. v. Securitas, Inc.,* 111 D.P.R. 580, 582 (1981); *C.R.U.V. v. Hampton Dev.,* 112 D.P.R. 59, 64 (1982); *U.I.L. de Ponce v. Dest. Serrallés, Inc., supra,* a la pág. 353 (1985); *J.R.T. v. Hato Rey Psychiatric Hosp., supra,* a la pág. 68; *J.R.T. v. Junta Adm. Muelle Mun. de Ponce, supra,* a la pág. 326.

Ahora bien, que un laudo sea emitido conforme a derecho significa:

*"Condicionar un laudo a que sea conforme a derecho' significa que el árbitro no puede ignorar las normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y Puerto Rico en el campo de derecho laboral y que se reputarán persuasivas las decisiones de los tribunales de primera instancia y de agencias administrativas, y los laudos y escritos de reputados árbitros." J.R.T. v. Hato Rey Psychiatric Hosp., supra,* a la pág. 68.

Cuando las partes expresen en el convenio colectivo o en el acuerdo de sumisión que el laudo deberá ser emitido conforme a derecho, *"los árbitros deben seguir las reglas de derecho y rendir sus laudos a tenor con las doctrinas legales prevalecientes. Si el convenio de arbitraje nada dice en cuanto a esto, de conformidad con la Ley Común y bajo la mayoría de las leyes de arbitraje, los árbitros pueden declarar cuál es la ley, y ningún laudo será anulado a causa de sus errores de derecho." Junta de Relaciones del Trabajo v. N.Y. & P.R. S/S. Co.,* 69 D. P.R. 782, 797-800 (1949); *Autoridades sobre Hogares v. Tribl. Superior, supra,* a la pág. 354. Es decir, el árbitro no puede ignorar las normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y de Puerto Rico en el campo de derecho laboral y se reputarán persuasivas las decisiones de los

tribunales de primera instancia y de agencias administrativas y los laudos y escritos de reputados árbitros. *Autoridad de Edificios Públicos v. Unión Independiente de Empleados de la Autoridad de Edificios Públicos,* 130 D.P.R. 983, 988 (1992). Lo esencial para las partes es que el tribunal intervenga en la etapa de revisión y determine si el árbitro estuvo correcto en la aplicación del derecho. En estos casos, nuestra función es tratar el laudo como una sentencia del tribunal inferior con el fin de determinar si la sala sentenciadora cumplió con la obligación de resolver según el derecho vigente. No se trata de relitigar la controversia en un proceso civil ordinario, lo que convertiría la labor del árbitro en un ejercicio inútil y desvirtuaría la naturaleza del procedimiento de arbitraje laboral. Queda claro que la revisión de un laudo de arbitraje no constituye un juicio *de novo* y que el tribunal debe limitarse a verificar que la determinación del árbitro sea conforme a derecho. *U.I.L. de Ponce v. Destilería Serrallés, Inc.,* 116 D.P.R. 348, 355 (1985); *Rivera v. Samaritano & Co.,* 108 D.P.R. 604, 609 (1979).

Lo anterior no quiere decir que se haya alterado la norma de autorestricción de los tribunales al ejercer su función revisora sobre los árbitros. Sin embargo, aun en casos donde se permite revisar la validez jurídica del laudo, los tribunales no deben inclinarse fácilmente a invalidarlos, a menos que sea evidente que no fueron resueltos conforme a derecho. *Rivera v. Samaritano & Co., Inc.,* 108 D.P.R. 604, 609 (1979). Aun siendo el laudo de arbitraje conforme a derecho, *"una discrepancia de criterio con el laudo, no justifica la intervención judicial, pues destruye los propósitos fundamentales del arbitraje de resolver las controversias rápidamente, sin los costos y demoras del proceso judicial." Id.*

## III

En el caso de autos, surge que el acuerdo de sumisión consiste en determinar si conforme a derecho, el Convenio Colectivo aplicable y la prueba desfilada, el despido de Durán estuvo justificado. Para ello, la árbitro y dentro de la jurisdicción que le fue delimitada, pautó como ciertos los hechos antes esbozados y procedió a realizar un análisis del convenio y del Reglamento aplicable en el caso de autos.

Según surge del expediente ante nos, en el Artículo XLIII del Convenio, la Autoridad se reservó el derecho de imponer medidas disciplinarias que pueden ir desde la separación permanente hasta aquellas medidas que estime pertinente en casos como *"trabajar en aparente estado de embriaguez o de drogas."* Véase Artículo XLIII, sección 11. Por otra parte, el Reglamento del Programa Permanente para la Detección de Sustancias Controladas y Alcohol en Funcionarios y Empleados de la Autoridad de los Puertos aplicable a las circunstancias ante nos establece, en su artículo VI, que:

*"Está terminantemente prohibida la manufactura, posesión, consumo, venta y distribución de alcohol y sustancias controladas por parte de los empleados de la Autoridad, en los predios pertenecientes a ésta o en las áreas de trabajo de la Autoridad. Esta conducta podrá ser penalizada conforme a la Legislación Federal, Ley Núm.78 (Arts. 13 y 14), Reglamento de Personal o Convenio Colectivo aplicable."*

A su vez, la sección 3 del mismo artículo dispone que *"será conducta sancionable el uso de sustancias controladas y alcohol en el área de trabajo".* Además, de que se podrán imponer las sanciones conforme a la Legislación Federal, Ley Núm.78, Reglamento de Personal o Convenio Colectivo, a todo empleado que por primera vez o segunda vez, de positivo a un examen de sustancias controladas y alcohol. Art. XI (d). De otra parte, el Reglamento dispone:

*"En el caso de que se trate de un funcionario o empleado reincidente, la Agencia no tendrá que cumplir con el requisito de enviarlo a tratamiento. En este caso, la Agencia tampoco tendrá que otorgar los beneficios de tiempo compensatorio, licencia por vacaciones y licencia sin sueldo ni absorber los costos del tratamiento y la rehabilitación."* Artículo XII del Reglamento. (Énfasis suplido.) Véase 3 L.P.R.A. § 2510(g).

Por otra parte, la Ley Num. 78 de 14 de agosto de 1997, 3 L.P.R.A. § 2501, *et seq.,* conocida como *"Ley Para*

*Reglamentar las Pruebas para la Detección de Sustancias Controladas en el Empleo en el Sector Público"* establece que:

*"Cuando se trate de un funcionario o empleado reincidente; disponiéndose que, en tal caso, se podrá optar por la suspensión sin sueldo o cualquier otra sanción o medida correctiva que disponga mediante reglamento."* 3 L.P.R.A. § 2511.

## IV

En el caso de autos, la árbitro tajantemente establece que de acuerdo al convenio colectivo y el reglamento, sólo bastaba una primera ofensa al uso de sustancias controladas, ya que la Autoridad se reservó la prerrogativa de imponer las medidas disciplinarias que estimase pertinentes, como por ejemplo el despido. Dicha aseveración surge de las citadas disposiciones contractuales según hemos establecido. Más aún y por otra parte, la árbitro señaló, a su vez, que en el caso de autos, la Autoridad no venía obligada a enviar a Durán a tratamiento, ya que éste era *"reincidente"*. La palabra *"reincidente"* significa aquél que reincide o sea el que vuelve a caer o incurrir en un error, falta o delito. Véase *Diccionario General Ilustrado de la Lengua Española,* Vox, Barcelona, 1era Edición 1991, a la pág. 944. La referida determinación es cónsona con el derecho, el convenio y las leyes aplicables que establece que en estos casos la Autoridad podía optar por la suspensión de sueldo o cualquier otra sanción o medida correctiva; en este caso, la Autoridad, en su facultad para imponer la sanción, optó por despedir a Durán. Dicha actuación está avalada por el convenio entre las partes y el derecho aplicable. Además, dicha determinación está dentro de los límites del acuerdo de sumisión que rige el laudo de arbitraje, ya que la árbitro, para establecer si el despido de Durán estuvo o no justificado, podía determinar o auscultar la posibilidad de que éste fuera *"reincidente"*, lo que permitía a la Autoridad despedirlo sin referirlo a tratamiento.

Por tanto, en el caso de epígrafe, tanto la árbitro como el TPI resolvieron de acuerdo con el derecho vigente. La determinación de la árbitro es conforme a derecho y no existe razón alguna para que este Tribunal intervenga con tal determinación.

## V

Por los fundamentos antes esbozados, se deniega la expedición del auto de *certiorari* según solicitado.

El Juez Rodríguez Muñiz disiente, pues entiende que el peticionario debió ser sancionado como primer ofensor. Aun cuando fuera catalogado como reincidente, lo que procedía, según el Programa sobre Detección de Sustancias Controladas y Alcohol y del Reglamento del Programa Permanente para la Detección de Sustancias Controladas y Alcohol en Funcionarios y Empleados de la Autoridad de los Puertos, era referirlo nuevamente al Programa Ambulatorio de ASSMCA.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2004 DTA 128

1. A la luz de la norma vigente en cuanto a que un patrono no puede poner en vigor un programa de detección de uso de sustancias controladas para sus empleados, que incluye la posible sanción de despido por dar positivo a la prueba, sin antes negociarlo con la Unión. Véase: *Condado Plaza v. Asoc. Emp. Casino de P.R.,* 149 D.P.R. 347 (1999).

2. Además, surge que la Autoridad apuntó a que del récord de Durán surgen memorandos sobre problemas de ausentismo, anotaciones incompletas en informes diarios, ausencia sin autorizar, indisciplina, no anotar turnos de trabajo, no seguir instrucciones, incumplimiento de deberes, suspensión de treinta días, discusión, pelea y amenazas a compañeros.