ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| SE7VEN, LLC.<br><br>Parte Peticionaria<br><br><br>v.<br><br><br>LUIS BURGUERA REGOJO, MAYRA SOMOZA LINARES<br><br>Parte Recurrida | KLAN202300093 | *APELACIÓN* acogida como *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil número: SJ2022CV08954 (802)<br><br>Sobre: Impugnación o confirmación de laudo arbitral |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez, el Juez Rodríguez Flores y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, a 28 de febrero de 2023.

Compareció ante este Tribunal la parte peticionaria, Se7ven, LLC. (en adelante, la "Peticionaria") mediante recurso de apelación presentado el 2 de febrero de 2023. Nos solicitó la revocación de la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI") el 29 de diciembre de 2022, notificada y archivada en autos el 3 de enero de 2023, la cual denegó una solicitud de reconsideración interpuesta por la Peticionaria de la *Sentencia* emitida por el foro primario el 14 de diciembre de 2022, notificada y archivada en autos ese mismo día.

De conformidad con las disposiciones de la Regla 32 (D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, se acoge el presente recurso como un auto de *certiorari*. *Véase*, Hosp. del Maestro v. U.N.T.S., 151 D.P.R. 934 (2000).

Acogido como tal y por los fundamentos que exponemos a continuación, se *expide* el auto solicitado y se *confirma* el dictamen recurrido.

I.

Número Identificador
SEN2023 _____

El 12 de octubre de 2022, la Peticionaria presentó "**Petición para Revocar *Laudo* Final a tenor con la Ley de Arbitraje Comercial, 32 L.P.R.A. §§ 3222, 3224 y la jurisprudencia**" (en adelante, la "*Petición*") ante el TPI. Mediante la misma, solicitó la revocación del *Laudo Final* emitido el 12 de septiembre de 2022, en el caso núm. 01-21-0004-8381 (en adelante, el "*Laudo*"). En síntesis, la Peticionaria sostuvo que el árbitro actuó incorrectamente, al llevar a cabo determinaciones de hechos y conclusiones de derecho erróneas, basadas en la única prueba testifical presentada por la parte recurrida, Luis Burguera Recojo y Mayra Somoza Linares (en adelante, los "Recurridos"). Argumentó que el dictamen contenido en *Laudo* no se sostenía por la prueba desfilada y que la interpretación efectuada por el Árbitro del Contrato de Compraventa de Acciones otorgado entre las partes de epígrafe el 30 de diciembre de 2016 (en adelante, el "*Contrato*") fue errónea. A esos efectos, solicitó la revocación del *Laudo* a base de cierto Memorando de Derecho que fue presentado ante la consideración del Árbitro.

El 26 de octubre de 2022, los Recurridos presentaron "**Moción de Desestimación de Petición para que se Revoque Laudo Arbitral y Solicitud para que se Confirme el Laudo Final de 12 de septiembre de 2022**". Argumentaron que la *Petición* era improcedente e inmeritoria en derecho y que debía desestimarse de plano. Fundamentaron su postura a base de la Cláusula 13 del *Contrato*, la cual establece que en caso de que surgiera entre las partes alguna disputa o controversia con relación al acuerdo suscrito, debía ser sometida a arbitraje y la decisión que se emitiera durante dicho proceso sería final y obligatoria para ambas (en adelante, la "*Cláusula de Arbitraje*").

Añadieron que, como las partes pactaron la finalidad y obligatoriedad del *Laudo*, la *Petición* para revocar o revisar los méritos del mismo contraviene lo que las partes expresamente pactaron libremente. En la alternativa, sostuvieron los Recurridos que en los méritos la *Petición* era igualmente inmeritoria y debía desestimarse, toda vez que no existía base

para sostener que el *Laudo* se obtuvo mediante fraude, conducta impropia del árbitro o falta de debido proceso de ley. Igualmente, arguyeron que lo que procedía en derecho era confirmar el *Laudo*, a la luz de las disposiciones del Artículo 21 de la Ley Núm. 376 de 8 de mayo de 1951, según enmendada, conocida como la "Ley de Arbitraje Comercial en Puerto Rico", *infra*.

El 16 de noviembre de 2022, la Peticionaria presentó "**Oposición a Moción de Desestimación**". En lo que a la *Cláusula de Arbitraje* se refiere, expuso que, durante el proceso ante el Árbitro, las partes acordaron que las vistas se celebraría de conformidad con el "*Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association amended and effective on October 1, 2013*" y el Código Civil de Puerto Rico y que dichos acuerdos se incorporaron a un documento intitulado "*Preliminary Scheduling Order*" (en adelante, el "PSO"). Expuso que el PSO surgió como parte del "*Arbitration Management Conference*" llevado a cabo el 18 de noviembre de 2021, el cual, era un proceso similar y análogo a la Conferencia con Antelación a Juicio que se celebra en los procesos civiles ante los Tribunales de Puerto Rico. Asimismo, planteó que en dicha conferencia las partes acordaron las fechas para llevar a cabo las vistas de arbitraje, las fechas en las cuales debían ser presentados los testigos y peritos de las partes, así como las leyes aplicables al proceso de arbitraje final.

Expresó la Peticionaria que resultaría contradictorio concluir que mediante el PSO las partes hubieran estipulado que los asuntos sometidos al proceso de arbitraje fueran acorde al Código Civil de Puerto Rico y que los Recurridos argumentaran que procedía la desestimación, toda vez que el *Contrato* establece que la decisión emitida por el árbitro sería final y firme. Ello a base de que los Tribunales de Puerto Rico pueden revisar los méritos jurídicos de un laudo de arbitraje en los casos en que las partes expresamente acordaron que los asuntos sometidos a dicho procedimiento tenían que ser resueltos con arreglo a derecho. Es decir, la postura de la

Peticionaria es que, debido a que en el PSO las partes acordaron que el árbitro aplicaría el Código Civil, ello se traducía a que habían pactado que el *Laudo* sería conforme a derecho. De otra parte, añadió que el TPI tenía jurisdicción para proceder a atender la *Petición*, toda vez que el Árbitro no resolvió una solicitud de desestimación que presentó en dicho proceso y que en el *Laudo* emitido se omitió hacer determinación alguna sobre los méritos de la misma.

El 17 de noviembre de 2022, el foro *a quo* emitió *Orden* mediante la cual declaró No Ha Lugar la solicitud de desestimación presentada por los Recurridos. Inconformes, estos últimos presentaron "**Moción de Reconsideración**" el 21 de noviembre de 2022. Expresaron que el *Laudo* emitido no era revisable por ninguna de las partes puesto que éstas pactaron en la *Cláusula de Arbitraje* que la decisión del árbitro sería final y obligatoria para ambas. Así pues, fue su postura que pactar la finalidad y obligatoriedad de un laudo, para que no sea revisable por ninguna de las partes, no es contrario a la ley, a la moral o al orden público, por lo que los contratantes están obligados a cumplir con lo pactado. En la alternativa, expusieron que no existía base en el expediente para sostener que medió fraude, conducta impropia o falta de debido proceso de ley. Asimismo, arguyeron que procedía la confirmación del *Laudo* porque la decisión del Árbitro estuvo ampliamente sostenida por evidencia sustancial que surgía del récord.

El 8 de diciembre de 2022, la Peticionaria presentó la correspondiente oposición. Evaluadas las posturas de ambas partes, el 14 de diciembre de 2022, el TPI emitió la *Sentencia*. Mediante le referido dictamen, el foro primario dejó sin efecto al *Orden* emitida el 17 de noviembre de 2022 y en reconsideración, desestimó la *Petición* por falta de jurisdicción. Concluyó que las partes pactaron, libre y voluntariamente, que, si se presentaba una disputa en arbitraje, el *Laudo* o decisión que emitiera el Árbitro sería "final y obligatoria" para ambas. Por tal razón, entendió el TPI que la Peticionaria estaba impedida de solicitar la revisión judicial del

*Laudo* o solicitar su revocación porque contractualmente acordó lo contrario. Asimismo, coligió que en el caso no estaban presentes ninguna de las circunstancias que permitían la intervención judicial. Finalmente, reiteró la determinación del Árbitro, a los efectos de que la Peticionaria le adeuda a los Recurridos la suma de $787,465.00, más el interés de 5% desde el 25 de julio de 2019, hasta su saldo total y le impuso el pago de $1,000.00, en concepto de honorarios de abogados más las costas del procedimiento.

El 29 de diciembre de 2022, la Peticionaria presentó "**Reconsideración de Sentencia**". Notificada el 3 de enero de 2023, el TPI dictó *Orden* declarando No Ha Lugar la misma. Aún insatisfecha, el 2 de febrero de 2023, la Peticionaria presentó el recurso ante nuestra consideración. Le imputó al foro recurrido la comisión del siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA PETICIÓN DE REVOCACIÓN DE LAUDO POR FALTA DE JURISDICCIÓN, A PESAR DE QUE LAS PARTES ACORDARON QUE EL LAUDO FUERA EMITIDO CONFORME A DERECHO, LO CUAL, CONFORME A LA JURISPRUDENCIA DE NUESTRO TRIBUNAL SUPREMO, LE CONCEDE JURISDICCIÓN PARA REVISAR LA DETERMINACIÓN EFECTUADA POR EL ÁRBITRO.

II.[1]

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Arthur Young & Co. v. Vega III, 136 DPR 157, 169 (1994); Guadalupe Solís v. González Durieux, 172 DPR 676, 683 (2007). A base de éste, **las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público**. Art. 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3372. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos

---

[1] Advertimos que somos conscientes de que el Código Civil de 1930 fue derogado mediante la aprobación de la Ley Núm. 55-2020, conocida como el "Código Civil de 2020". No obstante, esta última pieza legislativa establece, en su Artículo 1812, lo siguiente: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación del recurso, se utilizarán las disposiciones del Código Civil derogado.

de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil de Puerto Rico, 31 LPRA sec. 3375. Es por ello que existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de Puerto Rico, 31 LPRA sec. 3371.

Como parte de la libertad de contratación que permea en nuestro ordenamiento, los contratantes pueden incluir en sus contratos una cláusula de selección de foro. Ello, con el fin de establecer quién atenderá las disputas que puedan surgir de la relación contractual entre las partes. Bobé _et al._ v. UBS Financial Services, 198 DPR 6, 15 (2017).

La Ley de Arbitraje Comercial de Puerto Rico, 32 LPRA sec. 3201 _et seq._ (en adelante, la "Ley de Arbitraje"), establece que las partes contratantes podrán someter a arbitraje cualquier disputa que pudiera surgir dentro de la vigencia del acuerdo habido entre ambas. Específicamente, el Artículo 1 dispone que:

> Dos o más partes podrán convenir por escrito en someter a arbitraje, de conformidad con las disposiciones de este capítulo, cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. **Tal convenio será válido, exigible e irrevocable** salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio. 32 LPRA sec. 3201 (énfasis suplido).

No obstante, nuestro Tribunal Supremo ha reiterado que este mecanismo sólo podrá utilizarse si así se ha pactado expresamente. S.L.G. Méndez Acevedo v. Nieves Rivera, 179 DPR 359, 367 (2010); S.I.U. de Puerto Rico v. Otis Elevador Co., 105 DPR 832, 837 (1977). De ser así,

ante circunstancias que revelen que entre las partes existe un acuerdo mediante el cual se canaliza cierto tipo de controversia ante un árbitro, lo procedente es la abstención judicial. Bird Const. Corp. v. A.E.E., 152 DPR 928, 938 (2000). Ello porque cuando los contratantes se obligan a utilizar el arbitraje como método para resolver las controversias, "se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia". Depto. Educ. v. Díaz Maldonado, 183 DPR 315, 325 (2011).

En consonancia con lo anterior, el Artículo 22 de la Ley de Arbitraje establece los únicos motivos que darían lugar a la revocación o variación por parte del Tribunal de lo resuelto en un laudo, a saber: (a) si se obtuvo mediante corrupción, fraude u otro medio indebido; (b) si medió parcialidad o corrupción evidente de los árbitros, o cualquiera de ellos; (c) si éstos actuaron erróneamente al negarse a posponer la vista luego de mostrarse causa justificada para ello, o al rehusar oír evidencia pertinente y material a la controversia, o cuando incurrieren en cualquier error que perjudique los derechos de cualquiera de las partes; (d) si se extendieron en sus funciones, o el laudo emitido no resolvió de manera final y definitiva la controversia; y (e) si no hubo sumisión o convenio de arbitraje válido y el procedimiento se inició sin diligenciar la notificación de intención de arbitrar. 32 LPRA sec. 3222; C.R.U.V. v. Hampton Dev., 112 DPR 59, 62 (1982).

Conforme hemos adelantado, ante la existencia de un convenio de arbitraje, lo prudencial es la abstención judicial, no obstante, esa intervención no está vedada completamente. Municipio de Mayagüez v. Lebrón, 167 DPR 713, 721 (2006). Por ello, se ha establecido consistentemente que la limitación de los tribunales cede cuando el convenio de arbitraje consigne **expresamente** que el laudo debe ser resuelto conforme a derecho. De este modo, un tribunal tiene facultad para revisar los términos jurídicos de un laudo. S.I.U. de P.R. v. Otis Elevator Co., *supra*, pág. 837. El efecto de lo anterior es que la parte afectada por la determinación del árbitro puede recurrir ante el foro judicial para impugnarlo, así como para revisar su corrección y validez jurídica, cuando

se ha errado en la aplicación del derecho. J.R.T. v. Hato Rey Psychiatric Hosp., 119 DPR 62, 68 (1987); U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 DPR 348, 352-353 (1985). Sin embargo, no fue la intención legislativa que los laudos estén sujetos a revisión en su fondo por cualquier error de los árbitros en la apreciación de los hechos o de las normas de derecho que un tribunal aplicaría a la controversia. Autoridad sobre Hogares v. Tribl. Superior, 82 DPR 344, 359 (1961).

Es decir, cuando las partes así lo disponen, los árbitros deben seguir las reglas de derecho y rendir sus laudos a tenor con las doctrinas legales prevalecientes. Rivera v. Samaritano & Co., Inc., 108 DPR 604, 609 (1979). **Por ello, se ha interpretado que en defecto de una cláusula expresa que disponga que el laudo deba ser conforme a derecho**, "los árbitros pueden declarar cuál es la ley, y ningún *Laudo* será anulado a causa de sus errores de derecho". Íd. **En vista de la anterior norma, una vez culmina el proceso de arbitraje, las determinaciones realizadas por el árbitro son finales e inapelables y no pueden litigarse ante los tribunales**. Constructora Estelar v. Aut. Edif. Púb., 183 DPR 1, 33 (2011). "Tampoco se puede indagar sobre el proceso deliberativo, mental y decisional del árbitro. Mucho menos resultan revisables alegados errores en la apreciación de la prueba o en la aplicación del derecho." Íd. Por ello, el Tribunal Supremo de Puerto Rico ha establecido que las cláusulas de selección de foro son *prima facie* válidas y que, quien se oponga a su aplicación, tendrá el peso de la prueba para rebatirla. Íd., pág. 16; Unisys v. Ramallo Brothers, 128 DPR 842, 857 (1991).

III.

La Peticionaria sostuvo que el foro primario erró al desestimar la *Petición*, por falta de jurisdicción, toda vez que las partes comparecieron al "*Arbitration Management Conference*", durante el cual se adoptó el PSO. Arguyó que, conforme al mismo, acordaron que el proceso de arbitraje sería llevado a cabo, en su perspectiva procesal, conforme a las "*Commercial Arbitration Rules and Mediation Procedures of the American*

*Arbitration Association amended and effective on October 1, 2013*" y en cuanto al aspecto sustantivo, el *Laudo* debía ser emitido acorde con el Código Civil de 1930. A base de lo anterior, planteó la Peticionaria que las partes, por mutuo acuerdo, pactaron que el *Laudo* fuera conforme a derecho. No le asiste la razón.

De conformidad con el estado de derecho reseñado, ante la existencia de un convenio de arbitraje, la norma general conduce a la abstención judicial. Ahora bien, nuestra intervención no está vedada completamente. Municipio de Mayagüez v. Lebrón*, supra*, pág. 721. Por ello, se ha establecido consistentemente que la limitación de los tribunales cede cuando el convenio de arbitraje consigna **expresamente** que el laudo debe ser resuelto conforme a derecho. El efecto de lo anterior es que la parte afectada por la determinación del árbitro puede recurrir ante el foro judicial para impugnarlo, así como para revisar su corrección y validez jurídica, cuando se ha errado en la aplicación del derecho. J.R.T. v. Hato Rey Psychiatric Hosp.*, supra*, pág. 68.

**Por tanto, la jurisprudencia vigente ha concluido que en defecto de una cláusula expresa que disponga que el laudo deba ser conforme a derecho**, "los árbitros pueden declarar cuál es la ley, y ningún laudo será anulado a causa de sus errores de derecho". Rivera v. Samaritano & Co., Inc.*, supra*, pág. 609. **Ello provoca que las determinaciones realizadas por el árbitro sean finales e inapelables y no puedan litigarse ante los tribunales**. Constructora Estelar v. Aut. Edif. Púb.*, supra*, pág. 33.

La controversia del caso de autos no es ajena a dicha norma. Y es que no existe controversia alguna sobre el hecho de que la *Cláusula de Arbitraje* contenida en el *Contrato* establece expresamente que la determinación a la que arribe el árbitro escogido sería final y obligatoria. Tampoco existe contención sobre el hecho de que la *Cláusula de Arbitraje* no establece expresamente que el laudo debía ser conforme a derecho.

Así pues, cimentados en la máxima de que en nuestra jurisdicción el contrato tiene fuerza de ley entre las partes, por lo que, desde el

momento de su perfeccionamiento, cada contratante se obliga, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley, estamos impedidos de intervenir en los méritos de la decisión a la que llegó el Árbitro. Nótese que en ningún momento la Peticionaria ha alegado que el *Laudo* se obtuvo mediante corrupción, fraude u otro medio indebido o que medió parcialidad del Árbitro o que se hubiera quebrantado su derecho a un debido proceso de ley. De igual forma, tampoco existe alegación de que la *Cláusula de Arbitraje* adolece de nulidad que requiera la intervención judicial.

La inexistencia de alegación tendente a establecer que alguna de las circunstancias contenidas en el Artículo 22 de la Ley de Arbitraje inclinan la balanza a la abstención judicial provoca que nuestra conclusión sea confirmar el dictamen recurrido. El examen del recurso presentado por la Peticionaria ante nuestra consideración revela que esta última reconoció que la *Cláusula de Arbitraje* no establece explícitamente que el *Laudo* debía ser conforme a derecho.[2] Según expuesto, la Peticionaria sostiene que como en el PSO las partes acordaron que, desde la perspectiva sustantiva, el *Laudo* sería adjudicado a la luz del Código Civil de 1930, se debía concluir que ello resultó en que el mismo debía ser conforme a derecho. Así pues, la teoría de la Peticionaria está cimentada en que, por virtud del PSO, se enmendó el pacto de sumisión que las partes acordaron en la *Cláusula de Arbitraje*. Dicha teoría no encuentra base en nuestro estado de derecho vigente.

Adviértase que es la propia Peticionaria quien reconoce que el PSO es análogo al informe preliminar entre abogados que se rinde como parte de la celebración de una conferencia con antelación al juicio, de conformidad con la Regla 36.4 de las Procedimiento Civil, 32 LPRA Ap. V., R. 36.4. Un examen de las "*Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association amended and effective*

---

[2] *Véase*, Recurso de la Peticionaria, pág. 15.

*on October 1, 2013*" develan que, en efecto, ello es así. Por tanto, acoger la postura de la Peticionaria equivaldría a reconocer que un informe preliminar entre abogados sobre un pleito relacionado con la interpretación de un contrato enmienda, *ipso facto*, las cláusulas, términos y condiciones que las partes pactaron en dicho contrato.

La *Cláusula de Arbitraje* es clara a los efectos de disponer que:

> Toda disputa, controversia o diferencia que pueda de algún modo surgir entre el Vendedor y el Comprador con relación a Contrato, cualquier reclamación de indemnización bajo la Sección 10, cualquier ajuste al Precio de Compraventa bajo la Sección 2(d)(ii) o cualquier otro asunto relacionado a este Contrato, incluyendo la determinación de la arbitrabilidad de las disputas, se someterá y será resuelta definitivamente por arbitraje en San Juan, Puerto Rico por un árbitro de acuerdo con las Reglas de la Asociación Americana de Arbitraje ('AAA'), cuyo árbitro será residente de Puerto Rico. El arbitraje se conducirá en el idioma español. **La decisión del árbitro será final y obligatoria para las partes, y un tribunal con jurisdicción podrá emitir una sentencia basada en el laudo.** En la medida que las partes no logren acordar la selección del árbitro en un término de quince (15) días desde que cualquiera de las partes solicitó comenzar el proceso de arbitraje, cada parte seleccionará a un árbitro dentro de un período adicional de diez (10) días y los dos árbitros seleccionados por las partes por mutuo acuerdo, seleccionarán a un tercer árbitro dentro de quince (15) días adicionales, y dicho tercer árbitro será el único que atenderá y resolverá la disputa.[3]

Es norma trillada que la interpretación de un contrato con pacto de sumisión debe ser analizada desde el principio de la libertad de contratación de las partes. Utilizando como norte dicho axioma y en ausencia de alegación de que el Contrato es contrario a la ley, la moral o al orden público, venimos compelidos a respetar la voluntad de las partes de epígrafe. No procede interpretar, como intima en su teoría la Peticionaria, que el PSO enmendó la *Cláusula de Arbitraje* contenida en el *Contrato*, para concluir que el *Laudo* debía ser conforme a derecho.

La distinguida juzgadora de instancia decidió conforme a derecho al emitir la *Sentencia* en reconsideración y concluir que carece de jurisdicción para modificar o revocar el *Laudo*. La determinación apelada no se

---

[3] *Véase*, Apéndice del recurso, pág. 120 (énfasis suplido).

distanció del esquema jurídico que rige en materia de revisión de los laudos de arbitraje, por lo que procede su confirmación.

IV.

Por los fundamentos expuestos anteriormente, se *expide* el recurso de *certiorari* ante nos y se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones