

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| Departamento de Educación<br><br>Recurrido<br><br>v.<br><br>Ricardo Díaz Maldonado<br><br>Peticionario | Certiorari<br><br>2011 TSPR 161<br><br>183 DPR \_\_\_\_ |

Número del Caso:  CC - 2009 - 1014

Fecha: 2 de noviembre de 2011

Tribunal de Apelaciones:

Región Judicial de San Juan, Panel II

Juez Ponente:          Hon. Edgardo Rivera García

Abogados de la Parte Peticionaria:

Lcdo. Ricardo Santos Ortíz

Oficina de la Procuradora General:

Lcda. Rosa E. Pérez Agosto
Procuradora General Auxiliar

Materia:      Revisión de Laudo

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publació n oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Educación

      Recurrido

        v.

                                CC-2009-1014

Ricardo Díaz Maldonado

      Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 2 de noviembre de 2011.

Este caso nos permite resolver, en primer lugar, si un recurso de impugnación del laudo fue notificado debidamente a las partes en el pleito. Así conoceremos si el Tribunal de Primera Instancia tenía jurisdicción para emitir una sentencia. En segundo lugar, analizaremos si los años de servicio prestados como maestro mediante un contrato transitorio en el Departamento de Educación deben honrarse como años de experiencia al considerar la elegibilidad para un aumento de salario.

Evaluada la controversia, resolvemos que el Tribunal de Primera Instancia actuó con

jurisdicción al momento de emitir la sentencia. Asimismo, concluimos que nada en la Ley Núm. 34 de 13 de junio de 1966, 18 L.P.R.A. sec. 281-309j, impide que se computen los años de experiencia como maestro bajo contrato transitorio para propósitos de aumento de salario una vez se obtiene un nombramiento de carrera. Por todo lo anterior, revocamos al Tribunal de Apelaciones.

I

El peticionario Ricardo Díaz Maldonado comenzó a trabajar como maestro de Educación Física en el Departamento de Educación (antes Departamento de Instrucción Pública) en agosto de 1998, bajo contrato, con un nombramiento clasificado como transitorio elegible. Es decir, estaba "nombrado por un término fijo en una plaza para la cual pose[ía] certificado regular de maestro para la categoría correspondiente". Reglamento de Personal Docente del Departamento de Instrucción Pública, Núm. 3083, Departamento de Instrucción Pública, 21 de marzo de 1984, pág. 109. En mayo de 1999 obtuvo el grado de maestría en Educación con concentración en Educación Especial, y otra especialidad en Currículo y Enseñanza. Ese mismo año, efectivo el 2 de agosto, se le concedió un nombramiento como maestro de carrera, con status probatorio, y un salario mensual de $1,570. Ese era el salario que correspondía a los maestros que poseían maestría, pero no tenían experiencia.

Al ubicar al peticionario Díaz Maldonado en la escala salarial que proveía la Ley Núm. 34, supra, el

Departamento de Educación no consideró el año en que este trabajó como maestro transitorio elegible. Ese año de experiencia habría hecho una diferencia de $25 adicionales por mes, para un salario total de $1,595 mensuales.

A través de los canales de quejas y agravios que proveía el convenio colectivo vigente para esa fecha, el señor Díaz Maldonado reclamó que se considerara el año en que trabajó como maestro transitorio elegible para ubicarlo en la escala superior. El 22 de febrero de 2008 la Comisión de Relaciones del Trabajo del Servicio Público emitió un laudo de arbitraje que concedió la petición del maestro. Le reconoció como acreedor del salario mensual de $1,595, retroactivo al 1 de mayo de 2000.

Inconforme, el 13 de marzo de 2008 el Departamento de Educación impugnó el laudo de arbitraje en el Tribunal de Primera Instancia. Ese escrito no se notificó a la Federación de Maestros de Puerto Rico (FMPR), que figuraba como representante exclusivo del peticionario al momento de iniciar la reclamación, pero que luego quedó descertificada el 8 de enero de 2008 por una orden de la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP). Por esos hechos, la FMPR presentó un recurso de revisión ante el Tribunal de Apelaciones de la determinación de la CRTSP, acompañada de una solicitud en auxilio de jurisdicción. El foro apelativo intermedio, al amparo de las Reglas 61(A)(1) y 79 de su Reglamento, paralizó temporalmente la decisión de la Comisión hasta el 22 de febrero de 2008, fecha límite que se le concedió al

Departamento de Educación para presentar su alegato. Finalmente, el 29 de febrero de 2008 el Tribunal de Apelaciones dictó sentencia en la que confirmó la desertificación de la FMPR (Caso Núm. KLRA200800115).

El 14 de mayo de 2008 el maestro Díaz Maldonado y la FMPR impugnaron la jurisdicción del tribunal en su caso. Alegaron falta de notificación adecuada por parte del Departamento de Educación por lo que solicitaron la desestimación de la petición de impugnación de laudo. En la alternativa, pidieron que se les concediera un término de 20 días para responder a la impugnación del laudo.

El Tribunal de Primera Instancia, sin conceder el tiempo solicitado para responder, ni emitir orden o notificación al respecto, revocó el laudo de arbitraje el 6 de abril de 2009. Ese foro entendió que la controversia no fue resuelta conforme a derecho. Razonó que cuando el señor Díaz Maldonado "recibió su nombramiento en el puesto de carrera con status probatorio, no se configuró un ascenso. Esto es así debido a que el Recurrido tenía un año de experiencia, la cual fue adquirida en un puesto transitorio". Apéndice del recurso, pág. 42. Añadió que

> [e]l Recurrido ingresó al servicio público al recibir su nombramiento en un puesto de carrera el 2 de agosto de 1999. Al ser nombrado a dicho puesto de carrera, se le asign[ó] al Recurrido el sueldo correspondiente al maestro con grado de maestría. Desde ese momento en que comienza a ocupar el puesto de carrera, es que comienza el término para contar la experiencia del Recurrido. El año que el Recurrido ocupó antes de ser nombrado a su puesto de carrera fue en un puesto transitorio, el cual fue justificado por la necesidad del puesto durante el año que el Recurrido lo ocupaba.

Apéndice del recurso, pág. 44.

Inconforme, el peticionario Díaz Maldonado recurrió ante el Tribunal de Apelaciones, que denegó el *certiorari* el 26 de octubre de 2009. En su resolución, el foro apelativo intermedio repitió los mismos argumentos del Tribunal de Primera Instancia para concluir que "el año de servicio prestado por el peticionario [Díaz Maldonado] como empleado transitorio se justificó por la necesidad del servicio, y su nombramiento al puesto de carrera no constituyó un ascenso que pudiese justificar un sueldo mayor al correspondiente, para un maestro con salario básico y grado de maestría". Apéndice del recurso, pág. 17.

Insatisfecho nuevamente, el maestro Díaz Maldonado recurre ante nos. Repite sus planteamientos de que el Tribunal de Primera Instancia actuó sin jurisdicción al atender la impugnación de un laudo que no se notificó a todas las partes que estaban dentro del caso a la fecha de presentación. Además, aduce que el tribunal excedió su discreción al revocar el laudo de arbitraje que le reconoció una acreencia de $25 mensuales adicionales de salario, conforme a su interpretación de la Ley Núm. 34, supra. El 7 de mayo de 2010 expedimos el auto de *certiorari*.

II

A

La Ley de Relaciones del Trabajo del Servicio Público, Ley Núm. 45 de 25 de febrero de 1998, 3 L.P.R.A. sec. 1452f y ss., creó la Comisión de Relaciones del Trabajo del Servicio Público. Este organismo tiene entre sus funciones

> [i]nterpretar, aplicar y hacer cumplir las disposiciones de este capítulo en todo lo relativo a los procesos de organización, certificación, descertificación de organizaciones sindicales; en los procedimientos relacionados con la conciliación y arbitraje de negociaciones de convenios colectivos, en los procedimientos relacionados con prácticas ilícitas....

Sec. 11.15, 3 L.P.R.A. sec. 1452t.

La Sec. 10.1 de la Ley de Relaciones del Trabajo, 3 L.P.R.A. sec. 1452d, especifica que el mecanismo de revisión de las órdenes y resoluciones finales de la Comisión será la presentación de un recurso de revisión ante el Tribunal de Apelaciones. Este se atenderá discrecionalmente.

El término para esa revisión será el que dispone la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2101 y ss. En lo pertinente, la Sec. 4.6 de la L.P.A.U., según enmendada, 3 L.P.R.A. sec. 2176, señala que

> [e]l Tribunal de Apelaciones revisará como cuestión de derecho las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. La mera presentación del recurso no paralizará el trámite en el organismo o agencia administrativa, a menos que el Tribunal así lo determine.

El procedimiento a seguir para los recursos de revisión será de acuerdo con lo establecido en el Reglamento del Tribunal de Apelaciones aprobado por el Tribunal Supremo. […]

Términos iguales se expresan en la Regla 61 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. AP. XXII-B, sobre los efectos de la presentación de un recurso de revisión administrativa. A solicitud de parte, se podrá emitir una orden para paralizar los efectos de una sentencia.

B

El peticionario Díaz Maldonado esboza que el Tribunal de Primera Instancia estaba impedido de ver el recurso de impugnación del laudo de la Comisión porque el Departamento de Educación no notificó a todas las partes, específicamente, a la Federación de Maestros. No tiene razón.

La organización sindical formó parte del caso ante la Comisión, pero quedó descertificada como representante exclusivo de los maestros de la agencia el 8 de enero de 2008. La orden de la Comisión que descertificó a la Federación establecía expresamente, entre otras cosas, que la organización tenía que cesar inmediatamente de representar a los maestros del sistema público de enseñanza. Esa orden se emitió el 8 de enero de 2008 y se enmendó el 1 de febrero de 2008. Conviene recordar que esa orden es una determinación administrativa, sujeta a revisión judicial en los términos que dispone la L.P.A.U.,

según la Ley de Relaciones del Trabajo del Servicio Público.

Según la Regla 61 del Reglamento del Tribunal de Apelaciones, supra, y la Sección 4.3 de la L.P.A.U., supra, las órdenes sujetas a revisión administrativa no quedan paralizadas con la mera presentación de un recurso, a menos que el foro apelativo disponga otra cosa. Así pues, la orden que descertificó a la Federación fue efectiva desde que se emitió.

Si bien es cierto que el Tribunal de Apelaciones emitió una orden de suspensión de los efectos de la orden administrativa de descertificación, esa orden judicial fue efectiva solo desde el 11 hasta el 22 de febrero de 2008. El laudo de la Comisión de Relaciones del Trabajo se publicó el 22 de febrero de 2008 y se notificó a todas las partes.

Fue la impugnación del laudo en el caso del maestro Díaz Maldonado ante el Tribunal de Primera Instancia, presentada el 13 de marzo de 2008 por el Departamento de Educación, lo que se dejó de notificar a la Federación de Maestros. Para esa fecha, la orden de paralización del Tribunal de Apelaciones en el caso de la descertificación ya no estaba vigente, así que la descertificación de la Federación estaba en plena efectividad.

El señor Díaz Maldonado plantea que se debió notificar a la Federación porque la descertificación era final, pero no firme, pues se encontraba en los canales apelativos. Alega que la Federación debió ser parte en el pleito hasta

el 27 de junio de 2008, cuando la descertificación advino a ser una determinación final y firme, tras la disposición del caso de la descertificación de la Federación ante este Tribunal.

No nos convence su posición. Reiteramos que en los casos de decisiones administrativas, éstas son efectivas desde que se emiten y sus efectos se paralizan solo por orden de los tribunales. La orden de paralización que emitió el Tribunal de Apelaciones en el caso de la descertificación no estaba vigente en el momento que se impugnó el laudo en el caso del maestro Díaz Maldonado. Por ello, el Departamento de Educación no estaba en la obligación de notificar a la Federación de Maestros de la impugnación del laudo en el caso del señor Díaz Maldonado porque la Federación había dejado de ser parte.

Aclarada la jurisdicción del Tribunal de Primera Instancia para emitir la sentencia, pasemos entonces a analizar la segunda controversia que nos ocupa.

### III

Hemos expresado en reiteradas ocasiones que "[e]n Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. Se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por lo tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral". C.F.S.E. v. Unión de Médicos, 170 D.P.R. 443, 448-449 (2007). Véanse, además, HIETEL v. PRTC, Op. de 30 de junio de 2011, 2011 T.S.P.R. 100, 2011 J.T.S. 105, 182 D.P.R. __

(2011); S.L.G. Méndez-Acevedo v. Nieves Rivera, 179 D.P.R. 359, 368 (2010); U.G.T. v. Corp. Difusión Púb., 168 D.P.R. 674, 682 (2006); Vélez v. Serv. Legales de P.R., Inc., 144 D.P.R. 673, 682 (1998); Martínez Rodríguez v. A.E.E., 133 D.P.R. 986, 995 (1993). Por ello, "cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia". C.F.S.E. v. Unión de Médicos, supra. Véanse, además, HIETEL v. PRTC, supra; López v. Destilería Serrallés, 90 D.P.R. 245, 256 (1964). Por ello, "un laudo basado en una sumisión voluntaria está sujeto a revisión judicial sólo si las partes convienen que la controversia sometida al árbitro sea resuelta conforme a derecho". U.G.T. v. Corp. Difusión Púb., supra, pág. 682. Véanse, además, Condado Plaza Hotel v. Asoc. de Empleados de Casino, 149 D.P.R. 347, 349 (1999); J.R.T. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 68 (1987); J.R.T. v. N.Y. & P.R. S/S Co., 69 D.P.R. 782, 801-802 (1949).

Así pues, en atención a esa deferencia, hemos establecido que la revisión de un laudo se circunscribirá, cuando no se ha especificado que sea conforme a derecho, "a la determinación de la existencia de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todos los asuntos en controversia". C.F.S.E. v. Unión de Médicos, supra, pág. 449. Véase, además, Aquino

González v. A.E.L.A., Op. de 25 de mayo de 2011, 2011 T.S.P.R. 77, 2011 J.T.S. 82, 182 D.P.R. __ (2011).

Ahora bien, cuando las partes acuerdan que el laudo se haga conforme a derecho, la facultad revisora de los tribunales es más amplia. Por ello, "podrán corregir errores jurídicos en atención al derecho aplicable. En tal supuesto, la revisión judicial de los laudos de arbitraje es análoga a la revisión judicial de las decisiones administrativas". C.F.S.E. v. Unión de Médicos, supra, pág. 449. Véanse, además, Condado Plaza v. Asoc. Emp. Casinos P.R., 149 D.P.R. 347, 353 (1999); Rivera v. Dir. Adm. Trib., 144 D.P.R. 808, 821-822 (1998).

Por consiguiente, cuando en un laudo se determina que el árbitro deberá resolver conforme a derecho, "el árbitro no puede ignorar las normas de derecho sustantivo en el campo del derecho laboral y debe resolver las controversias de acuerdo con las doctrinas legales prevalecientes". C.F.S.E. v. Unión de Médicos, supra, pág. 449. Sin embargo, si en el convenio de arbitraje nada se dice en cuanto a que deberá resolverse conforme a derecho, "los árbitros pueden declarar cuál es la ley, haciendo caso omiso de las reglas de derecho sustantivo" Íd., págs. 449-450. Véase, además, Rivera v. Samaritano & Co., Inc., 108 D.P.R. 604, 609 (1979). Es decir, la facultad del árbitro para diseñar remedios sería amplia, "*siempre y cuando tales remedios se derivaran de la esencia del convenio colectivo y el acuerdo de sumisión bajo el cual se actuaba*". (Énfasis en el original.) C.O.P.R. v. S.P.U.,

Op. de 28 de marzo de 2011, 2011 T.S.P.R. 47, 2011 J.T.S. 52, pág. 1094, 181 D.P.R. ___, ___ (2011). Por eso, "cuando un laudo está condicionado a emitirse [conforme a derecho], el árbitro debe velar celosamente por el cumplimiento de las reglas jurídicas vigentes en nuestro ordenamiento legal y rendir su decisión a tenor con las doctrinas legales prevalecientes". (Énfasis en el original.) Íd., pág. ___, 2011 J.T.S. 52, pág. 1093. Así pues, "[u]n laudo *conforme a derecho* confiere a las partes la certidumbre de que el resultado arbitral estará estrictamente aferrado a los límites de la ley, y que no se concederá un remedio más allá del provisto por nuestro andamiaje jurídico". (Énfasis en el original.) Íd., pág. ___, 2011 J.T.S. 52, pág. 1094. Por ello, "[c]onceder amplio margen a un árbitro para que diseñe remedios cuando el laudo está condicionado a emitirse *conforme a derecho* y las partes nada han dispuesto sobre los poderes del árbitro, socava principios básicos de derecho contractual y lesiona el acuerdo de voluntades plasmado en el convenio colectivo." (Énfasis en el original.) Íd.

No obstante, debe quedar claro que

el tribunal de instancia no debe inclinarse fácilmente a decretar la nulidad del laudo a menos que efectivamente el mismo no haya resuelto la controversia con arreglo a derecho, según lo pactaran las partes.... Debe tenerse presente que una discrepancia de criterio con el laudo no justifica la intervención judicial pues destruye los propósitos fundamentales del arbitraje de resolver las controversias rápidamente, sin los costos y demoras del proceso judicial.

Rivera v. Samaritano & Co., 108 D.P.R. 604, 609 (1979).

En el caso ante nos, las partes acordaron que el laudo de arbitraje se emitiera conforme a derecho. Por ende, procede la revisión del laudo en toda su extensión.

IV

De entrada, es necesario puntualizar que para el momento en que se suscitó la controversia, al Departamento de Educación[1] no le aplicaba la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 L.P.R.A. sec. 1301 y *ss*. El departamento fue designado administrador individual por la Ley Núm. 49 de 7 de junio de 1977. En virtud de lo anterior, el Departamento de Instrucción Pública promulgó el "Reglamento de Personal Docente del Departamento de Instrucción Pública". Este respondió al

> propósito de cumplir con el mandato legal que dispon[ía] que los administradores individuales deb[ían] adoptar para sí un reglamento para las áreas esenciales del principio de mérito y otras disposiciones necesarias relativas a la Administración de personal, todo ello de conformidad con las disposiciones de las Secciones 5.7 y 5.13 de la referida Ley Número 5.
>
> Reglamento de Personal Docente del Departamento de Instrucción Pública, supra, pág. 1.

Sin embargo, con la aprobación de la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm.

---

[1] En 1990 el Departamento de Instrucción Pública fue renombrado como Departamento de Educación en virtud de la Ley de Reforma Escolar, Ley Núm. 68 de 28 de agosto de 1990.

184 de 3 de agosto de 2004, según enmendada, 3 L.P.R.A. sec. 1301, el Departamento de Educación dejó de ser un administrador individual y volvió a formar parte del sistema de recursos humanos del servicio público del Gobierno de Puerto Rico. No obstante, al momento de suscitarse la controversia de este caso, el Departamento de Educación era un administrador individual que se regía por el Reglamento de Personal Docente, supra, para todo lo relacionado con el principio de mérito y administración de personal.

Precisamente, el Art. 12 del Reglamento de Personal Docente disponía que "[e]l **aspecto retributivo** del personal docente del Departamento de Instrucción Pública **se regir[ía] por las disposiciones contenidas en leyes especiales aplicables al efecto y los procedimientos internos aprobados**". Por ello, procedemos a resolver esta controversia conforme a los principios de la ley especial aplicable, la Ley Núm. 34, supra.

A

La Ley Núm. 34, íd., respondió "a una profunda inquietud gubernamental por elevar la remuneración de los maestros de conformidad con la realidad económica del momento y a tono con la aportación que estos servidores públicos han prestado al desarrollo económico de Puerto Rico así como a otros aspectos de nuestra vida colectiva". Informe de la Comisión de Instrucción y Cultura de la Cámara de Representantes, P. de la C. 438, 21 de abril de 1966, pág. 3.

Luego de un estudio de la remuneración de los maestros en ese entonces, se encontró que "(1) el sueldo que recib[ían] los maestros afecta[ba] en proporción directa la eficiencia del funcionamiento del sistema y la calidad del producto educativo; [y] (2) existía un desbalance entre los sueldos de los maestros y de los otros empleados públicos en posiciones de responsabilidad y preparación similares." Íd., págs. 3-4. Conforme a lo anterior, se creó la política de sueldos docentes dentro de tres normas básicas:

> (1) equiparar el sueldo básico de los maestros al de empleados del Gobierno de preparación académica y responsabilidad comparable;(2) compensar la excelencia desarrollada por la experiencia en la enseñanza y aumentar los sueldos básicos en vigor; aumentar los índices de retención en el servicio de los maestros; y (3) estimular a los maestros a que logren la más alta preparación académica, estableciendo diferencias razonables en los sueldos básicos y en la compensación por experiencia, basados en la preparación académica del maestro.
>
> Informe de la Comisión de Hacienda, P. de la C. 438, 27 de abril de 1966, pág. 3.

Con esta medida, el gobierno colocó un esfuerzo singular en dotar al país de un sistema educativo que facilitara a todos la oportunidad de una mejor educación. Íd., pág. 4. Esa encomienda tendría más éxito, evidentemente, si al personal docente se le remuneraba de acuerdo a su preparación académica. De esta forma, se les "induc[ía] a alcanzar niveles superiores de preparación académica y [a] retenerlos en el servicio activo". Íd.

Así pues, el legislador creó una fórmula de aumentos en el sueldo de los maestros que dependía de su preparación académica y los años de servicio. Esa fórmula se encuentra

en el Art. 4 de la Ley Núm. 34, 18 L.P.R.A. sec. 309c. Ese

artículo dispone:

> La **retribución** de cada maestro se **aumentará** al **siguiente tipo intermedio en la escala correspondiente al terminar un año de servicio** hasta que alcance el sueldo máximo de la escala. Por **"año de servicio" se entenderá cualquier periodo de nueve (9) meses, dentro de un año escolar en que el maestro haya estado bajo contrato o nombramiento, y la acumulación de cualquier periodo de diez (10) meses de servicios prestados en diferentes años escolares; entendiéndose, que para los propósitos de las secs. 309 a 309j de este título, el año escolar comprende los meses escolares de agosto a julio subsiguiente.** Los aumentos por razón de años de servicio serán efectivos al empezar el año económico y en el caso de maestros que reingresan al servicio, en el mes en que el maestro empiece a trabajar durante el año económico.[2] [Énfasis suplido.]

Como vemos, se le aumentará la retribución al

siguiente tipo intermedio en la escala correspondiente a

todo **maestro** que **al terminar un año de servicio** esté **bajo**

**contrato o nombramiento**. Así pues, primero es necesario

analizar quién es el maestro cobijado por la Ley Núm. 34,

supra.

---

[2] Para el personal docente del programa regular del Departamento de Educación, el Art. 1 de la Ley Núm. 34, 18 L.P.R.A. sec. 309, estableció la siguiente escala retributiva, a partir de julio de 1996:

ESCALA DE SUELDOS QUE REGIRÁN PARA EL PERSONAL DOCENTE
DEL PROGRAMA REGULAR DE EDUCACION PÚBLICA
A PARTIR DE JULIO DE 1996

**TIPOS INTERMEDIOS**

| Categoría Puesto | Sueldo Básico Mens. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | Sueldo Máximo |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Menos Normal | $1,147 | 1,162 | 1,177 | 1,193 | 1,210 | 1,226 | 1,244 | | | | 1,261 |
| Normal | 1,235 | 1,255 | 1,275 | 1,295 | 1,317 | 1,337 | 1,357 | 1,378 | 1,398 | 1,418 | 1,440 |
| Bachillerato | 1,500 | 1,525 | 1,550 | 1,575 | 1,600 | 1,625 | 1,650 | 1,675 | 1,700 | 1,725 | 1,750 |
| Maestría | 1,570 | 1,595 | 1,620 | 1,645 | 1,670 | 1,695 | 1,720 | 1,745 | 1,770 | 1,795 | 1,820 |
| Doctorado | 1,712 | 1,737 | 1,762 | 1,787 | 1,812 | 1,837 | 1,862 | 1,887 | 1,912 | 1,937 | 1,962 |

.

El Art. 10 de la Ley Núm. 34, 18 L.P.R.A sec. 309i(b)(c), define como maestro de instrucción pública a "todo el personal docente, técnico y de supervisión del sistema escolar". La definición incluye también a "[l]os maestros o principales contratados como tales por otros departamentos o agencias del Estado Libre Asociado de Puerto Rico". Id. Sin embargo, **quedan excluidos** de esta definición "los maestros de escuelas nocturnas y los profesores de la Universidad de Puerto Rico", así como, el "personal de oficina". Id.

Ahora bien, el Art. 4, supra, reduce el año de servicio a cualquier periodo de nueve meses, en un año escolar en el que un maestro haya estado bajo contrato o nombramiento. El año escolar comprende los meses de agosto a julio. Íd. También, se considerará un año de servicio la acumulación de cualquier periodo de diez meses de servicios prestados en diferentes años escolares. Íd.

Finalmente, el Art. 4, íd., menciona que le corresponderá el aumento a todo maestro elegible que esté "bajo contrato o nombramiento". La Ley Núm. 34, supra, no brinda una definición de esos términos. Sin embargo, el Art. 18(35) del Reglamento de Personal Docente, supra, definía el "nombramiento" como "la designación oficial de una persona para realizar determinadas funciones". Asimismo, definía al "maestro transitorio elegible" como "aquél nombrado por un término fijo en una plaza para la cual posee certificado regular de maestro para la categoría correspondiente". Íd., Art. 18(34).

V

Sin lugar a dudas, el señor Díaz Maldonado disfrutó de un nombramiento transitorio durante el año anterior a su nombramiento como maestro de carrera con estatus probatorio. Sobre ello coinciden ambas partes en el pleito. Durante el año escolar 1998-1999 estudió una maestría en Educación con concentración en Educación Especial. Sin embargo, al nombrársele en el puesto de carrera en 1999, ya con su maestría, se le adjudicó un sueldo que correspondía al de un maestro con maestría, pero sin experiencia. El árbitro resolvió que conforme a la Ley Núm. 34, supra, al peticionario Díaz Maldonado le correspondía el sueldo de un maestro con maestría y un año de experiencia. Sin embargo, tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones acogieron la postura de la agencia que entendía que un año de servicio prestado como maestro transitorio no cuenta para propósitos de un aumento por años de servicios. Al concluir de esa forma erraron ambos foros.

En primer lugar, el maestro Díaz Maldonado está dentro de la definición de maestro del Art. 10 de la Ley Núm. 34, supra. Es parte del personal docente del sistema escolar. No está incluido entre las excepciones del artículo. Por ende, tenemos que concluir que la categoría de "maestro transitorio elegible" definida en el Art. 18(34) del Reglamento de Personal Docente está comprendida dentro de la categoría general de "Maestro de Instrucción Pública" que se menciona en el Art. 10 de la Ley Núm. 34, supra. Se trata de dos disposiciones sobre el mismo asunto que "deben

ser tratadas como un todo armónico, leyéndolas en conjunto, no interpretando aisladamente sus disposiciones". Torres Santiago v. Mun. de Coamo, 170 D.P.R. 541, 560 (2007). Si el legislador hubiera querido excluir a los maestros transitorios del aumento por años de servicio, lo habría hecho constar palmariamente. Así lo hizo con los profesores de escuelas nocturnas, los profesores de la Universidad de Puerto Rico y el personal de oficina.

En segundo lugar, el señor Díaz Maldonado laboró como maestro transitorio durante el año escolar 1998-1999. Es decir, empezó en el sistema educativo en el mes de agosto de 1998 y durante ese año, hasta el 31 de mayo de 1999, ejerció sus funciones como maestro transitorio elegible. Por ende, el señor Díaz Maldonado laboró como maestro durante los nueve meses que constituyen un año escolar. Así pues, cumple con el segundo requisito que impone el Art. 4 de la Ley Núm. 34, supra.

En tercer y último lugar, el señor Díaz Maldonado laboró como maestro bajo contrato transitorio. El Tribunal de Apelaciones no analizó directamente a qué se refería el legislador al mencionar al maestro "bajo contrato o nombramiento" en el Art. 4 de la Ley Núm. 34, supra. Por el contrario, ignoró lo dispuesto en el Art. 12 del Reglamento de Personal Docente, supra, y resolvió la controversia al amparo de leyes que no eran de aplicación a los hechos. Específicamente, el foro apelativo intermedio utilizó el Art. 4 y el Art. 6, Sección 6.12 del Reglamento de Personal Docente, supra, la Ley de Retribución Uniforme, Ley Núm. 89

de 12 de julio de 1978, así como la jurisprudencia en cuanto a los nombramientos transitorios y de carrera en el contexto de la Ley de Personal de Servicio Público, supra, para concluir que "el año de servicio prestado por el peticionario como empleado transitorio se justificó por la necesidad del servicio, y su nombramiento al puesto de carrera no constituyó un ascenso que pudiese justificar un sueldo mayor al correspondiente, para un maestro con salario básico y grado de maestría". Apéndice del recurso, págs. 16-17. Esa conclusión es errada.

La educación de nuestro pueblo es de trascendental importancia para el desarrollo de nuestra sociedad. Los maestros y maestras que componen el cuerpo docente del Departamento de Educación de Puerto Rico laboran a diario por el desarrollo intelectual, emocional y social de los niños y jóvenes de nuestra sociedad. Necesitamos profesionales del más alto calibre para ejercer tan importante labor. Por eso, el legislador concluyó que incentivar a los maestros por su preparación académica y experiencia repercute en un mejor funcionamiento laboral y en un deseo personal de superación.

La Ley Núm. 34, supra, no distingue entre contratos transitorios y nombramientos probatorios o permanentes, para propósitos de los aumentos salariales a los maestros. Como se aprecia del texto de la ley, esta dispone únicamente que los **empleados docentes** bajo contrato o nombramiento recibirán un aumento de sueldo **conforme a su preparación y años de servicio**. La ley no exige que los

años de servicio se presten en calidad de empleado regular. Recordemos que el Art. 4 de la Ley Núm. 34, *supra*, dispone que el aumento corresponderá a todo empleado docente elegible, que haya estado bajo contrato o nombramiento. De ahí que un empleado docente elegible tiene derecho al aumento salarial, independientemente de si ha estado trabajando bajo contrato como empleado transitorio o si tiene un nombramiento regular. Concluir de otra forma frustraría el propósito del legislador de incentivar la educación de nuestros maestros al remunerarlos conforme a su preparación académica y su experiencia en el salón de clase.

Por todo lo anterior, concluimos que corresponde computarle al peticionario Díaz Maldonado el año de servicio que prestó como maestro bajo contrato transitorio. Así pues, procede decretar el pago y ajuste al salario del señor Díaz Maldonado correspondiente a $25 mensuales por concepto de ajuste en la escala salarial al sueldo básico de un maestro con un año de experiencia que posee el grado de maestría, desde agosto de 1999 al presente.

VI

Por los fundamentos expuestos se dictará Sentencia para revocar la del Tribunal de Apelaciones y ordenar la restitución del laudo de arbitraje L-08-020.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Educación

    Recurrido

       v.

Ricardo Díaz Maldonado        CC-2009-1014

    Peticionario


SENTENCIA


En San Juan, Puerto Rico, a 2 de noviembre de 2011.


      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca al Tribunal de Apelaciones y se ordena la restitución del laudo de arbitraje L-08-020.

      Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. La Jueza Asociada señora Fiol Matta concurre sin opinión escrita. El Juez Asociado señor Rivera García no interviene.


              Aida Ileana Oquendo Graulau
            Secretaria del Tribunal Supremo