# 2003 DTA 103

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN**
**PANEL I**

AUTORIDAD DE ENERGIA ELECTRICA DE PUERTO RICO
Recurrida

v.

UNION DE EMPLEADOS PROFESIONALES INDEPENDIENTES
DE LA A.E.E. (UEPI)
Peticionario

Núm. KLCE-03-00158

San Juan, Puerto Rico, a 12 de junio de 2003

Panel integrado por su Presidenta, la Juez Fiol Matta,
y los Jueces González Rivera y Rivera Martínez

Rivera Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 27 de febrero de 2003, la Unión de Empleados Profesionales Independientes de la Autoridad de Energía Eléctrica (en adelante UEPI), presentó ante nuestra consideración una solicitud de *certiorari* para que se confirme al laudo emitido por el árbitro Angel A. Tanco Galíndez el 2 de octubre de 2001 y revocado por el Tribunal de Primera Instancia, Sala Superior de San Juan, en sentencia notificada y archivada el 18 de diciembre de 2002.

Por tratarse este caso de una revisión a una sentencia, acogemos el mismo como una apelación.

La controversia generadora del proceso de arbitraje surge de la negativa de la Autoridad de Energía Eléctrica (en adelante AEE), de acumularle bajo Licencia de Accidentes del Trabajo los días que se ausentó el empleado Ramón R. Mercado Cuevas siendo atendido por el Fondo de Seguro del Estado (en adelante FSE), luego de una revisión médica por parte del patrono. En la misma se determinó que el empleado se encontraba apto para regresar a desempeñar las tareas de su plaza, aun cuando éste no había sido dado de alta por el FSE.

Luego de analizar los escritos presentados y la decisión del Tribunal de Primera Instancia, resolvemos confirmar la sentencia apelada.

## I

El Sr. Ramón R. Mercado Cuevas, empleado de la AEE durante los últimos 16 años, se desempeña como Auxiliar de Ingeniería III. Allá para el 28 de septiembre de 1999, sufrió un accidente en las funciones de su trabajo. Inmediatamente se reportó al FSE donde fue diagnosticado con una intoxicación por la aspiración de vapores de insecticida y ordenado a un tratamiento de descanso. Siendo aún atendido por el FSE, el 15 de febrero de 2000, fue examinado por el médico de la AEE, quien determinó que el empleado estaba apto para realizar las tareas de su plaza. Como resultado, se le suspendió la concesión de beneficios de la Licencia por Accidente del Trabajo. Así se le hizo saber a Mercado mediante carta de 23 de febrero de 2000. █

La AEE cargó contra otras licencias, enfermedad o vacaciones regulares, el período comprendido entre el 16 de febrero del 2000 y el 9 de mayo del 2000, durante el cual el empleado estuvo ausente.

Posteriormente, y así las cosas, la UEPI se subrogó por el unionado y comenzó un proceso de arbitraje en el que reclamó el derecho del mismo a que se le acumulen esos días a la Licencia de Accidentes y no a las otras licencias disponibles antes mencionadas. Las partes no lograron establecer mutuamente la controversia a resolver, por lo que usando la facultad conferida por el Reglamento Para el Orden Interno de los Servicios de Arbitraje, el árbitro determinó que la controversia a resolver consistía en:

*"Determinar si la querella es o no arbitrable procesalmente. De serlo, determinar, conforme el convenio colectivo, si el querellante tiene o no derecho a la licencia reclamada. De tenerlo, proveer el remedio adecuado."* █

En consecuencia, el 2 de octubre de 2001, se emitió un laudo en el que el árbitro a cargo del caso de autos resolvió que la AEE no puede violar las disposiciones de la Ley del FSE, obligando al empleado a volver a su trabajo. Dicho laudo dispuso, además, que el tiempo que se ausentó el empleado de su trabajo debe ser acumulado contra la Licencia de Accidentes.

Inconforme con el laudo emitido, la AEE presentó recurso de revisión ante el Tribunal de Primera Instancia, Sala Superior de San Juan, haciendo dos señalamientos de errores, a saber: (1) que erró el árbitro al determinar

que tenía jurisdicción para ventilar la querella cuando el querellante tardó más de cuarenta y cinco (45) días laborables para interponer su querella, conforme al convenio colectivo, siendo la misma no arbitrable procesalmente; (2) que erró el árbitro al concluir que la Autoridad estaba impedida de cargar contra otras licencias distintas a la licencia por accidentes del trabajo, el período del 16 de febrero al 9 de mayo de 2000, en el que el querellante estuvo ausente de su trabajo por dictamen del Fondo del Seguro del Estado, obrando contrario a la letra clara del convenio colectivo.

En sentencia de 18 de diciembre de 2002, el Tribunal de Primera Instancia anuló el laudo impugnado y determinó que los días de ausencia del empleado debían ser cargados contra su Licencia por Enfermedad. El Tribunal se fundamentó en que el Convenio Colectivo en su Artículo XXXIV faculta al patrono a someter al empleado a una evaluación médica y a suspender los beneficios de la Licencia por Accidentes en el Trabajo si así lo encuentra pertinente. Además, el Tribunal se expresó a los efectos de que el Artículo IX del Convenio Colectivo limita la discreción del árbitro que atiende las disputas obrero-patronal a ser resueltas conforme a derecho y al Convenio Colectivo. En fin, el Tribunal de Primera Instancia concluyó que el árbitro, al emitir el laudo en el caso de autos, no lo hizo en armonía con el pacto laboral entre las partes. Así, también, el Tribunal concluyó que la AEE otorga beneficios marginales a sus empleados que exceden lo que dispone la Ley del FSE y que en ninguna manera limitar estos beneficios constituye una violación a la política pública laboral.

Por su parte, la UEPI recurre ante nos de la sentencia emitida por el Tribunal de Primera Instancia, señalando así dos errores que alegan haber sido cometidos por el Tribunal, a saber: (1) que erró el Tribunal de Primera Instancia al resolver que estando el empleado bajo la jurisdicción del Fondo del Seguro del Estado y habiendo ordenado y determinado esta agencia especializada que el empleado no podía trabajar, la Autoridad podía examinar médicamente al obrero y ordenarle que regresare al trabajo, en contraposición al dictamen del Fondo del Seguro del Estado; (2) que erró el Tribunal de Primera Instancia al resolver que el empleado se le podía cargar las ausencias entre el 16 de febrero y el 9 de mayo de 2000 (período de tiempo que estuvo reportado al Fondo del Seguro del Estado), a la Licencia por Enfermedad o a la Licencia de Vacaciones que tuviese a su haber y no a la licencia por accidentes del trabajo.

## II

Por entender que todos los señalamientos de error se encuentran íntimamente relacionados, discutiremos los mismos conjuntamente.

En el Artículo XXXIV, Sección 1, del Convenio Colectivo acordado entre las partes, el patrono concede a los empleados una Licencia por Accidentes del Trabajo. Esta sección dispone que:

*"En los casos en que un empleado profesional regular precise estar ausente de su trabajo debido a un accidente sufrido durante el trabajo y por dictamen del médico del Fondo del Seguro del Estado, la Autoridad pagará al empleado profesional regular durante el tiempo que esté ausente, a partir del accidente del trabajo, su sueldo completo por las horas regulares de trabajo hasta un máximo de ciento cuatro (104) semanas, y en caso de que precise estar ausente de su trabajo por dictamen del médico del Fondo del Seguro del Estado, como consecuencia de dicho accidente por más de ciento cuatro semanas, la Autoridad pagará al empleado profesional regular el ochenta por ciento (80%) de su sueldo por las horas regulares de trabajo hasta un máximo de cincuenta y dos semanas adicionales, pero descontándose el importe de la compensación semanal que pueda recibir el empleado profesional regular del Fondo del Seguro del Estado durante el período de incapacidad comprendido dentro de dichas ciento cuatro o ciento cincuenta y seis semanas, según sea el caso."*

De la Sección 1 del Artículo XXXIV anteriormente citado, se desprende que el beneficio otorgado por la AEE en el Convenio Colectivo excede el nivel mínimo de ayuda que debe recibir un empleado que ha sufrido un accidente en su trabajo, o sea, las exigencias de la Ley Número 45 del 18 de abril de 1935, mejor conocida como Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sección 1 y sig.

Estos beneficios marginales, al igual que otros, pueden ser limitados por las partes a través de acuerdos laborales. A estos efectos, el Tribunal Supremo dispone en el caso *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 D.P.R. 318, 333 (1988), que *"el convenio colectivo es un contrato que, como tal, tiene fuerza de ley entre las partes suscribientes, siempre que no contravenga las leyes, la moral y el orden público"*. Las secciones 3 y 4 de dicho Artículo XXXIV del Convenio Colectivo vigente entre las partes exponen:

*"Sección 3:*

*Mientras un empleado profesional regular se encuentra haciendo uso de Licencia por Accidentes del Trabajo, la Autoridad podrá realizar aquellos exámenes médicos que estime pertinentes a los efectos de determinar si persiste la condición surgida como consecuencia del accidente.*

*A: De determinar el médico de la Autoridad que el empleado profesional regular accidentado puede realizar las tareas de su plaza, el empleado profesional regular dejará de recibir de inmediato la Licencia con Paga que establece este Artículo. Mientras el referido médico no haga su determinación, prevalecerá la determinación del Fondo y se le pagará al empleado profesional regular el salario que corresponda. En aquellos casos en que se le suspenda la Licencia por Accidente, el empleado podrá hacer uso de las licencias que tenga acumuladas. (Enfasis suplido)*

*Sección 4:*

*Si un empleado profesional regular se negare a someterse a los exámenes médicos que la Autoridad le requiera, se entenderá que renuncia a la Licencia por Accidente del Trabajo contenida en este Artículo."*

La Sección 3, antes expuesta, de ninguna forma obliga a que el empleado vuelva a su trabajo. Se expresa claramente en su inciso (A) que *"en aquellos casos que se le suspenda la Licencia por Accidente, el empleado podrá hacer uso de las licencias que tenga acumuladas"*. En otras palabras, Ramón Mercado podía seguir ausentándose, como así lo hizo, pero a perjuicio de la acumulación de su Licencia por Enfermedad. Además, explica que como resultado de dicha evaluación médica se le eliminarían los beneficios de la Licencia por Accidentes en el Trabajo. La Sección 5 del Artículo XXXIV antes mencionado permite la revisión de dicha determinación médica. Dicha sección reza como sigue:

*"En cualquier caso en que el empleado profesional regular no esté de acuerdo con la determinación del médico de la Autoridad y produzca evidencia médica de un especialista en la condición que padezca el empleado que contradiga dicho dictamen, éste será referido a un médico especialista reconocido en la condición objeto de controversia. El empleado tendrá treinta (30) días calendario a partir de recibida la determinación del médico de la Autoridad para radicar dicha evidencia médica. Esta notificación podrá hacerse por escrito o llamada telefónica al empleado o a la Unión."*

Este proceso no fue utilizado por Ramón Mercado, a pesar de recibir notificación de la recomendación médica, la cual exponía su derecho a apelar dicha recomendación.

El Convenio Colectivo que opera en esta relación obrero-patronal reconoce que esta disputa se resuelve de forma sencilla y rápida con el uso de un árbitro. Dicho acuerdo especifica que disputas como éstas serán resueltas de acuerdo a derecho y el Convenio Colectivo, según se expone en el Artículo IX, Secciones 4 y 5:

*"Sección 4: Designación del Arbitro*

*El procedimiento de arbitraje será de acuerdo con las reglas que a estos efectos tiene el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos.*

*Sección 5:*

*Dicha decisión será conforme a derecho y al convenio colectivo, siendo la misma fiel e inapelable para las partes y ésta deberá establecer los fundamentos en que se basa la misma."*

Esta sumisión voluntaria de las partes para que la controversia sea resuelta conforme a derecho, permite revisión judicial si el árbitro actúa en total menosprecio al Convenio Colectivo y al derecho. El Tribunal Supremo de Puerto Rico, en *Rivera v. Samaritano & Co., Inc.,* 108 D.P.R. 604, 609 (1974), expresó que *"el convenio de sumisión es el que confiere la facultad decisional al árbitro y delimita su esfera de acción; siendo nulo el laudo si se excede de los poderes delegados en dicho convenio de sumisión".* Más adelante, el Tribunal Supremo, en *J.R.T. v. Hato Rey Psychiatric Hosp.,* 119 D.P.R. 62, 68 (1987), abunda sobre las razones de revisión y expresa *"... que cuando un laudo tiene que ser emitido conforme a derecho, cualquiera de las partes puede recurrir ante el foro judicial para impugnarlo por fraude, conducta impropia, falta de debido proceso de ley, violación a la política pública, falta de jurisdicción, que el laudo no resuelve todas las cuestiones en controversia que se sometieron y para revisar su corrección y validez jurídica".*

Por todo lo anteriormente expuesto, podemos concluir que el árbitro, al momento de emitir su laudo, erró al excederse de los poderes delegados, obviando las cláusulas del Convenio Colectivo vigente entre las partes y al no resolver conforme a derecho.

## III

Por los fundamentos antes expuestos, confirmamos la sentencia apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2003 DTA 103**

**1.** Apéndice 058 de la parte recurrente.

**2.** Apéndice 017 de la parte recurrente.