Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN Recurrido  v.  PROSOL-UTIER CAPÍTULO AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN Peticionario | TA2026AP00229 | *Apelación* acogida como *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Civil Núm.: SJ2025CV04487  Sobre: Impugnación o confirmación de laudo |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 20 de abril de 2026.

Comparece ante esta Curia el Programa de Solidaridad-UTIER, Capítulo de la Autoridad de Carreteras y Transportación (PROSOL-UTIER) mediante el presente recurso.[1] Solicita que revoquemos la *Sentencia* que el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) notificó, el 4 de noviembre de 2025, dejando sin efecto el laudo de arbitraje que el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Negociado) emitió, el 24 de abril de 2025.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y revocamos el dictamen impugnado.

---

[1] Mediante una *Resolución,* notificada el 4 de marzo de 2026, acogimos el presente recurso como una petición de *certiorari,* por ser este el apropiado, según la Regla 32 (c) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), para revisar una *Sentencia* final sobre una solicitud de laudo de arbitraje. Para propósitos administrativos, conservamos la designación alfanumérica asignada por la Secretaría de este Tribunal.

**I.**

El 20 de marzo y el 4 de abril de 2019, respectivamente, la Autoridad de Carreteras y Transportación (ACT) notificó a los señores Edwin Bones Díaz y Edgardo L. Zambrana Roig (Querellantes) sobre su intención de destituirlos del puesto de conductor de equipo pesado. Expuso la ACT que, de la investigación que efectuó la Oficina de Auditoría Interna sobre la nómina de octubre de 2015 de los empleados de la Brigada B, surgieron discrepancias con los horarios de trabajos sometidos y compensados. Basado en los hallazgos del Informe de Auditoría, la ACT señaló:

> [l]as brigadas están compuestas normalmente del supervisor, los operadores de equipos y estudios de tránsito (OEET), y el conductor del auto que tienen asignado. El examen reflejó desviaciones relacionadas con el cumplimiento de la jornada regular y extraordinaria. Así mismo, fallas vinculadas con la reclamación de dietas y la aprobación de la asistencia. Los gastos de salario regular y dietas que la Autoridad incurre en este personal son reembolsados por la Federal Highway Administration (FHWA).[2]

Específicamente, en cuanto al Sr. Bones Díaz, la notificación de intención de destitución puntualizó, "[s]egún esos formularios [ACT-578 y ACT-14], los empleados completaban a diario la jornada regular (7.50 horas), con excepción del Sr. Edwin F. Bones."[3] Sobre los comprobantes de gastos de viaje, la ACT añadió: "[l]a Orden de Viaje 13081759 del Sr. Edwin F. Bones Díaz y la 13082504 del Sr. [nombre tachado], relevaron [sic] que Salinas era la residencia oficial de ambos, pero habían caducado al 31 de diciembre de 2014. Los empleados sometieron los formularios ACT-183, con el patrón que se describe anteriormente, para los viajes que hicieron durante octubre de 2015. Dichos Comprobantes fueron autorizados y

---

[2] Entrada Núm. 5 del expediente electrónico del portal del Sistema Unificado de Manejo y Administración de Casos del Poder Judicial (SUMAC-TPI), págs. 444-445, 453-454.

[3] Entrada Núm. 5 de SUMAC-TPI, pág. 445. La misiva contiene una nota al calce que lee: "[e]l empleado figuró su asistencia del 28 de octubre de 2015 desde las 5:30 a.m. hasta las 10:30 a.m."

procesados para el pago, a pesar de que los formularios ACT-256, estaban derogados por falta de renovación."[4]

Nótese que, la notificación de intención de destitución del Sr. Zambrana Roig es muy similar a la del Sr. Bones Díaz en términos de su contenido. La referencia puntual al Sr. Zambrana Roig es la siguiente:

> [l]a Orden de Viaje 15082009 del Sr. [nombre tachado], y la 15081775 del Sr. Edgardo L. Zambrana Roig están sin actualizar. Estas indican que la residencia oficial de ambos continúa en Bayamón. Como integrante de la Brigada B, están supuesto[s] a viajar juntos con el Supervisor, quien tiene su residencia oficial en Salinas (Orden 15082051), y demás miembros en la unidad oficial (con la tablilla 944-363), para llevar a cabo sus trabajos. Asimismo, las descripciones de sus viajes deben coincidir con las del Sr. Felipe León Lugo."[5]

Sustentado en lo anterior, la ACT imputó a los Querellantes haber incurrido en las siguientes once (11) infracciones:

| | |
|---|---|
| Infracción 3. | Incurrir en ociosidad o falta de interés en el desempeño de sus deberes. |
| Infracción 6. | Negligencia o falta de eficiencia o diligencia de un empleado en el desempeño de sus funciones. |
| Infracción 7. | Falta de cumplimiento de las normas, órdenes administrativas o reglamentos que regulen las operaciones de la Autoridad. |
| Infracción 10. | Dejar de firmar o de registrar diariamente, así como marcar por adelantado en el Registro o Sistema de Asistencia Mecanizada o en la Hoja de Asistencia, la hora de entrada y salida. |
| Infracción 18. | Ajustar maliciosamente los informes mecanizados de asistencia con la intención de defraudar a la Autoridad. |
| Infracción 24: | Falsificar o alterar documentos oficiales o hacer declaraciones falsas. |
| Infracción 26: | Falsificar o alterar informes, nóminas y otros documentos de la Autoridad. |
| Infracción 29: | Ofrecer, ceder, regalar, dejar de facturar o cobrar indebidamente cualquier servicio que preste la Autoridad, incluyendo sus equipos, materiales o cualquier otra propiedad de esta. |
| Infracción 43. | Apropiarse, hurtar, escalar o sustraer cualquier propiedad y bienes de la Autoridad, de sus empleados, del Gobierno del Estado Libre Asociado de Puerto Rico y del público en general. |
| Infracción 44. | Negligencia en el manejo, retención indebida o uso no autorizado de dinero y otro valor o propiedad de la Autoridad, en |

---

[4] *Íd.*, pág. 446.
[5] *Íd.*, pág. 455. Surge del escrito una nota al calce que indica que la tachadura es para mantener la confidencialidad de la identidad de otro empleado.

violación de la reglamentación o normas fiscales establecidas.

Infracción 45.     Malversar fondos públicos.

Conforme a los trámites de rigor, la Oficial Examinadora celebró una vista administrativa informal. En ella, los Querellantes argumentaron que la *Notificación Intención de Destitución* es defectuosa porque, a su entender, incumple con su debido proceso de ley. Expusieron que, dicho escrito menciona -de forma general- las presuntas infracciones incurridas, sin detallar las fechas y los actos concretos que realizaron los Querellantes que dieron lugar a la acción disciplinaria. Añadieron que, tampoco la ACT identificó las piezas de evidencia que demuestran los fundamentos por los cuales se les disciplina.

A preguntas de su representante legal, los Peticionarios declararon durante la vista que, las presuntas incongruencias entre los horarios que surgen de las hojas de registro de asistencia y las que refleja el GPS del vehículo oficial que conducen, se debe a que, por instrucciones de su supervisor, realizan otras funciones que no envuelven el uso del camión. Entre ellas, actualizar informes, cuadrar registros y trabajar con cablería.

Sobre cuál es su residencia oficial, relevante para fines del cómputo de dietas, el Sr. Bones Díaz declaró que cuando ocupó el puesto de conductor de equipo pesado residía en Bayamón, luego en Salinas, regresó a Bayamón y hace dos años reside en Ponce. Mientras que, el Sr. Zambrana Roig testificó que, desde que comenzó a trabajar en la ACT, en el año 2002, reside en Bayamón. Ahora bien, ambos expresaron que, la ACT es quien tiene autoridad para establecer y modificar la residencia oficial de un empleado.

Evaluada la prueba, la Oficial Examinadora rindió los correspondientes informes, el 23 de mayo de 2019. En ambos enunció: "el Peticionario incumplió con su jornada regular y extraordinaria. Así también, este realizó fallas vinculadas con la

reclamación de dietas y aprobación de asistencias."[6] La Oficial Examinadora aseguró haber cumplido con los requisitos de una notificación adecuada en ambos casos. Sustentó lo antes en que, la destitución está fundamentada en la investigación e informe de la Oficina de Auditoría Interna, sin que los Querellantes presentaran prueba documental en contrario.

Sobre los méritos de la destitución del Sr. Bones Díaz, la Oficial Examinadora expuso:

> [...] el Peticionario solo indicó que su residencia oficial ha cambiado alrededor de los años. Que para hacer un cambio en la residencia oficial tendría que hacerlo la propia agencia. No obstante, el Peticionario no presentó argumentos ni evidencia que demostraran que el resultado de la investigación es incorrect[o]. Adicional a esto, ni siguiera negó que lo dispuesto en la misma no fuera cierto.[7]

Análogamente, en cuanto a los méritos de la destitución del Sr. Zambrana Roig señaló:

> [...] el Peticionario solo indicó que su residencia oficial es en Bayamón y que luego de octubre 2015 la agencia hizo el acercamiento para que enmendara sus asistencias ya que existían incongruencias en las mismas. Que para hacer un cambio en la residencia oficial tendría que hacerlo la propia agencia. No obstante, el Peticionario no presentó argumentos ni evidencia que demostraran que el resultado de la investigación es incorrect[o]. Adicional a esto, ni siquiera negó que lo dispuesto en la misma no fuera cierto.[8]

Amparado en lo anterior, la Oficial Examinadora concluyó que los Querellantes incurrieron en tres (3) infracciones: 29, 44 y 45, producto de lo cual, recomendó su destitución. A esos efectos, el 18 de junio de 2019, la ACT notificó a los Querellantes su confirmación de destitución. Obsérvese que, distinto a lo antes, en ella les imputó la comisión de las once (11) infracciones originalmente comunicadas antes de la celebración de la vista informal.

---

[6] *Íd.*, págs. 481 y 487.
[7] *Íd.*, pág. 483.
[8] *Íd.*, pág. 489.

Insatisfecho, PROSOL-UTIER procuró revisión mediante el proceso de arbitraje conforme el Convenio Colectivo vigente. A esos efectos, el Negociado celebró la vista adjudicativa, el 25 de enero de 2024, a la cual comparecieron ambas partes representadas por sus abogados. Debido a que no lograron un acuerdo de sumisión, cada parte presentó su Proyecto de Sumisión. En cumplimiento con la facultad concedida, la árbitro identificó como asunto a dilucidar lo siguiente:

> [d]eterminar si la destitución de los Querellantes estuvo o no justificada conforme al Convenio Colectivo, el Reglamento aplicable y [a] la prueba presentada.
>
> De determinar que no estuvo justificada, que se emita el remedio adecuado. De haber estado justificada, que se desestime la querella.

Evaluada la prueba, el 24 de abril de 2025, el Negociado emitió el *Laudo.*[9] Allí hizo constar que, las acciones por las cuales sancionaron a los Querellantes fueron autorizadas por sus supervisores. Además, catalogó de injusto responsabilizar a los Querellantes, sin estos tener facultad para aprobar y certificar los comprobantes de los gastos de viaje. Sobre tales bases, determinó que la destitución de los Querellantes fue injustificada, a tenor del Convenio Colectivo, del reglamento aplicable y de la prueba presentada. De conformidad, ordenó la restitución de ambos Querellantes a sus puestos de trabajo con todos los derechos, salarios y haberes dejados de recibir.

Inconforme con la determinación esbozada en el *Laudo,* el 27 de mayo de 2025, la ACT instó una *Solicitud de Revisión Judicial de Laudo Arbitral* ante el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario). La ACT sustentó su solicitud en que las discrepancias entre los horarios compensados a los Querellantes y los trabajados contravienen las normas de asistencia

---

[9] Casos núm.: A-19-2307 y A-19-2308.

establecidas en la reglamentación aplicable y redunda en el gasto fraudulento de fondos públicos. Agregó que, el Negociado avaló conducta constitutiva de apropiación ilícita de estos fondos, por el mero hecho de que, los supervisores y gerenciales autorizaron las asistencias de los Querellantes. Aseguró que, el Negociado carece de jurisdicción sobre estos supervisores y gerenciales.

Mientras que, el PROSOL-UTIER argumentó en su alegato ante el foro primario que, la determinación del Negociado no dispuso que la ACT debía desembolsar a favor de los Querellantes un pago por concepto de gastos de viaje y horas extras, más bien, por los salarios y haberes dejados de recibir. Sostuvo que, la controversia resuelta por la árbitro fue que la medida disciplinaria que asumió la ACT en contra de los Querellantes no se justificaba, conforme al Convenio Colectivo y a la reglamentación aplicable. Al planteamiento jurisdiccional levantado ripostaron que, el Negociado no intentó adquirir jurisdicción sobre los referidos supervisores al concluir que ellos firmaron y aprobaron los documentos sobre los cuales la ACT sustentó el despido de los Querellantes.

Sometido el asunto, mediante una *Sentencia* notificada el 4 de noviembre de 2025, el foro primario revocó el *Laudo.* Concluyó que el pronunciamiento arbitral, avala el dispendio indebido de fondos públicos al pagar a los Querellantes los gastos de viaje y horas extras por labores que no fueron realizadas. Agregó que el *Laudo* también menoscaba el uso adecuado del peculio público al restituir a ambos Querellantes con todos sus derechos, salarios y haberes dejados de recibir. De conformidad, declaró ha lugar la *Solicitud de Revisión Judicial de Laudo Arbitral* y confirmó la destitución de los Querellantes.

En desacuerdo, el 2 de marzo de 2026, el PROSOL-UTIER acude ante esta Curia mediante el presente recurso en el cual imputa al TPI lo siguiente:

Erró el Honorable TPI al determinar que el laudo emitido es nulo al violentar la política pública del Gobierno de Puerto Rico al dictaminar que el remedio otorgado por la árbitro, el cual es la restitución de empleo y sueldo de ambos trabajadores, es concomitante a aceptar el desembolso incorrecto de fondos públicos.

Erró el Honorable TPI al añadir determinaciones de hecho distintos a aquellos delimitados por la Honorable Árbitro con la cual justificó su determinación para anular el Laudo emitido.

En cumplimiento con nuestro requerimiento, la ACT comparece mediante su correspondiente *Alegato en Oposición a Expedición de Auto de Certiorari.* Con el beneficio de las posturas de ambas partes, resolvemos.

## II.

### A. Expedición del auto de *certiorari*

La Regla 32(D) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, establece que **el recurso de *certiorari* es el vehículo procesal adecuado para revisar** las resoluciones, órdenes o **sentencias finales de un laudo de arbitraje del TPI.** Como se sabe, el recurso de *certiorari* es el mecanismo discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de menor jerarquía. Regla 52.1 de Procedimiento Civil de 2009, *supra*; *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Las Reglas de Procedimiento Civil disponen que el Tribunal de Apelaciones expedirá el recurso de *certiorari* cuando el peticionario recurra de una resolución u orden sobre remedios provisionales, *injunctions* o de la denegatoria de mociones dispositivas. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023).

En ese sentido, el auto de *certiorari* es limitado y excluye aquellas determinaciones interlocutorias que pueden esperar hasta la determinación final del tribunal para formar parte de un recurso de apelación. *800 Ponce de León v. AIG*, 205 DPR 163, 191 (2020).

El delimitar la revisión a instancias específicas tiene como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp.*, et al., 202 DPR 478 (2019). La Regla 52.1 de Procedimiento Civil de 2009, *supra,* viabiliza por excepción la revisión de: (1) decisiones sobre admisibilidad de testigos de hechos o peritos esenciales, (2) asuntos relativos a privilegios evidenciarios, (3) anotaciones de rebeldía, (4) casos de relaciones de familia, (5) asuntos de interés público y (6) situaciones en la cuales esperar a la apelación constituye un fracaso irremediable a la justicia.

Los criterios que el Tribunal de Apelaciones examina para ejercer la discreción sobre la expedición del *certiorari* se encuentran en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* según enmendado por *In re: Enmdas. Regl. TA,* 198 DPR 626 (2017).[10] El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). A tenor de la Regla 11(C) de nuestro Reglamento, *supra,*

---

[10] La referida Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro). *Íd.*

cuando la citada Regla 52.1 impida expedir el auto de *certiorari,* procede denegar su expedición.

**B. La revisión de los laudos de arbitraje y el debido proceso de ley**

La negociación colectiva está revestida de un gran interés público ya que constituye un medio eficaz para promover la estabilidad y paz industrial. *Landrau Cabezudo y otros v. Autoridad de los Puertos de Puerto Rico y otros,* 2025 TSPR 7, resuelto el 15 de enero de 2025. Por ello, los convenios colectivos no deben ser catalogados como meros contratos que consagran derechos individuales, sino que se deben considerar instrumentos que crean relaciones e intereses a la luz de la política pública laboral estatal. *AAA v. UIA,* 199 DPR 638, 648 (2018). Según ha sido interpretado, el convenio colectivo es consistente con el principio de la libertad de contratación, pues una vez las partes prestan su consentimiento, éste se convierte en la ley entre las partes. D. Fernández y C. Romany, *Derecho Laboral,* Tomo II, República Dominicana, Ed. Universidad de Puerto Rico, 1987, pág. 1030.[11] No obstante, lo anterior, cabe recordar que, todo acto que goza del principio de la libertad en la contratación no puede contravenir las leyes ni la Constitución. *Íd.*

En el convenio colectivo las partes pueden pactar que sus reclamos se canalicen a través de un proceso de arbitraje, mediante el establecimiento de un sistema de quejas y agravios. *Íd.* En un acuerdo de arbitraje, dos partes se obligan a someter voluntariamente su disputa a un tercero -conocido como árbitro- a quien reconocen como imparcial y capacitado para decidir de manera justa. *Hope Tucker v. Money Group, LLC y otros,* 2026 TSPR 9, resuelto el 27 de enero de 2026. En tales casos, tanto las uniones

---

[11] Véase, además, *Landrau Cabezudo y otros v. Autoridad de los Puertos de Puerto Rico y otros,* supra.

como los patronos sustituyen a los tribunales por los árbitros. *Landrau Cabezudo y otros v. Autoridad de los Puertos de Puerto Rico y otros,* supra.

A tales efectos, el Alto Foro ha reconocido que el arbitraje constituye un medio más apropiado que los tribunales para la resolución de controversias de carácter obrero-patronal, por ser más flexible, y menos técnico y oneroso. *Íd.* Según se desprende de lo anteriormente expuesto, el arbitraje es un procedimiento de poderes delegados y mediante el convenio colectivo se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican. A. Acevedo Colom, *Legislación protectora del trabajo comentada,* 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393.

En cuanto a los laudos arbitrales, el Máximo Foro ha reconocido que las determinaciones arbitrales constituyen ley entre las partes a las cuales los tribunales habrán de conceder especial deferencia. *Landrau Cabezudo y otros v. Autoridad de los Puertos de Puerto Rico y otros,* supra. Para invalidar un laudo resulta necesario que surja, de forma evidente, que el mismo no se resolvió conforme a derecho. *Rivera v. Samaritano & Corp.,* 108 DPR 604, 609 (1979).

Entiéndase que, los foros judiciales debemos abstenernos de reinterpretar un laudo, salvo ante la falta de jurisdicción, del cumplimiento con el debido proceso de ley, de la solución de todas las cuestiones en disputa; cuando haya mediado fraude o conducta impropia del árbitro; o ante un laudo contrario a la política pública. *Íd.* La parte que solicita la revocación o anulación de un laudo, por alguna de las instancias permitidas, deberá exponer los fundamentos que dan lugar a su pedido y sustentarlos con prueba. La mera alegación de apreciación y evaluación errónea de la evidencia es insuficiente para revisar, cambiar, modificar o variar un laudo y sus determinaciones de hecho. *S.I.U. de P.R. v. Otis*

*Elevator Co.,* 105 DPR 832 (1977).

Por esta razón, de ordinario, no se justifica la intervención judicial ante una discrepancia de criterio con el laudo, puesto que ello menoscaba el propósito fundamental del arbitraje de resolver las controversias de forma rápida, sin los costos y demoras del proceso judicial. *U.C.P.R. v. Triangle Engineering Corp.,* 136 DPR 133, 143 (1994). Ahora bien, esta autolimitación judicial no es absoluta. La revisión judicial queda justificada, entre otros, en aquellos casos en los cuales el procedimiento de arbitraje careció de un debido proceso de ley. *Indulac v. Unión,* 207 DPR 279 (2021).

Cabe señalar que, el debido proceso de ley es esencial en nuestro sistema democrático y consiste en el derecho de arraigo constitucional de toda persona a un proceso justo, en el cual, se le brinden todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como administrativo. *Íd.* Ahora bien, en el ámbito administrativo, el debido proceso de ley no tiene la misma rigidez que en los procedimientos adjudicativos ante los tribunales. *Román Ortiz v. OGPe,* 203 DPR 947 (2020). Esto obedece en gran medida a la necesidad que tienen las agencias administrativas de tramitar sus procedimientos de forma expedita y a la pericia que se presume tienen para atender y resolver los asuntos que le han sido delegados. *Íd.*

Sin embargo, hemos reiterado que el procedimiento adjudicativo administrativo debe de ser justo en todas sus etapas y tiene que ceñirse a las garantías mínimas del debido proceso de ley, conforme al interés involucrado y a la naturaleza del procedimiento que se trate. *Íd.* El Alto Foro consideró cumplido el estándar en el ámbito del arbitraje obrero-patronal si el agraviado es notificado e informado de los cargos en su contra, se celebra una vista y se le permite someter evidencia. *Indulac v. Unión,* supra, págs. 297-298.

**III.**

En su recurso, el PROSOL-UTIER impugna la determinación del foro primario de revocar el *Laudo* y ordenar la destitución de los Querellantes, bajo el supuesto de que ello implica la aceptación del desembolso incorrecto de fondos públicos. Además, imputa al TPI añadir determinaciones de hechos sobre las cuales justificó la anulación del *Laudo*.[12] A juicio de PROSOL-UTIER, el TPI confundió el remedio que otorgó la árbitro -atinente a la procedencia de la destitución como medida disciplinaria- con un desembolso incorrecto de fondos públicos. Discute que, conforme a la prueba, no se configuran los elementos de conducta y de intención inherentes a las faltas imputadas a los Querellantes.

En su alegato, los Recurridos discutieron que la ACT evidenció mediante prueba documental y testifical que -durante el mes de octubre de 2015- los Querellantes se apropiaron ilegalmente de fondos públicos al cobrar su jornada completa, más horas extra y gastos de viaje, a sabiendas de que no procedían y basados en información falsa. Expusieron que, los Querellantes "cometieron, entre muchas otras, tres (3) infracciones."[13]

Tras un examen sosegado del expediente y según adelantamos en el tracto procesal, observamos una diferencia en la cantidad de infracciones que la Oficial Examinadora identificó en contra de los Querellantes y la cuantía de infracciones imputada tanto en la notificación de intención como en la confirmación de destitución. En particular, el Informe de la Oficial Examinadora, rendido luego de celebrar la vista informal, les imputa haber cometido las infracciones número 29, 44 y 45. Mientras que, la *Notificación Intención de Destitución* y la *Confirmación de Destitución* de ambos

---

[12] Por la estrecha relación entre ambos errores, los discutiremos de manera conjunta.

[13] Véase, *Oposición a Expedición de Certiorari,* pág. 8.

Querellantes les imputa haber cometido once (11) infracciones, a saber: Infracción Núm. 3, 6, 7, 10, 18, 24, 26, 29, 43, 44, 45.

A lo anterior se añade que, no surge claramente de estos tres (3) documentos, ni del expediente, la correlación entre las infracciones imputadas y las actuaciones de los Querellantes, constitutivas de irregularidades. Incluso, las notificaciones de intención y confirmación de destitución atribuyen -de forma general y colectiva- varias de las infracciones mencionadas a los empleados de la Brigada B, sin particularizar a los Querellantes.

Análogamente, el informe que rindió la Oficina de Auditoría Interna -en el cual la Oficial Examinadora sustentó su informe- atribuyó gran parte de las irregularidades halladas -también de manera generalizada- a los empleados de la Brigada B. Cabe resaltar que, el alcance del Informe de Auditoría, en términos de su contenido, se limitó a la investigación de las nóminas de octubre de 2015. Lo antes debido a que, durante ese mes, la Brigada B estaba autorizada a laborar horas extra para aumentar la recopilación de datos y cumplir con los requisitos de la FHWA. Al exponer las "irregularidades" encontradas en cuanto a las reclamaciones de horas extras, sin antes completar la jornada regular, y sobre los reembolsos de gastos contrarios a los preceptos de dietas, la auditoría aludió a los empleados de la Brigada B, sin especificidad. Atribuyó directamente a los Querellantes las fallas relacionadas a las *Ordenes de Viaje (ACT-256).* Al Sr. Bones Díaz también le imputó el incumplimiento con la jornada regular. A esos efectos puntualizó como nota al calce número 4 que: "[e]l empleado figuró su asistencia del 28 de octubre de 2015 desde las 5:30 hasta las 10:30 a.m."[14]

Observamos que, el Informe de Auditoría contiene términos vagos al referirse a los hallazgos. A continuación, algunos ejemplos:

---

[14] Entrada Núm. 6 de SUMAC-TPI, pág. 496.

"[e]l personal registró aproximadamente 702.50 h regulares, de las cuales 124.35 h ($1,430.31) resultan cuestionables (Anejo II). Las diferencias diarias en tiempo no trabajado oscilan entre 15 min y 3:33 h regulares"; "[...] el personal aparentemente trabajaba sin interrupción durante el periodo de alimentos"; "[e]l Subdirector del Área de Programación argumentó que ha exigido al personal de las brigadas que reflejen los horarios en el *Comprobante de Gastos de Viaje* acordes con las horas que presentan los informes del GPS. Sin embargo, aclaró que ha habido resistencia a acatar dichas instrucciones."[15]

Similarmente, la notificación de *Confirmación de Destitución*[16] utilizó un lenguaje impreciso al establecer: "[...] surge discrepancia con los horarios de trabajos sometidos por usted y por los cuales recibió compensación".[17] Al exponer cuáles fueron las "fallas" con las *Ordenes de Viajes* que justificaron la destitución de los Querellantes, la ACT expresó en su notificación -de forma colectiva- que los empleados reflejaron en los Comprobantes de Gastos de Viaje de octubre de 2015 "normalmente el inicio de la semana con salida desde Bayamón" y que esto "sucedió usualmente los lunes y viernes de cada semana".[18] Del mismo modo, la Oficial Examinadora utilizó en su informe palabras imprecisas tales como: "incongruencias" en las asistencias, "fallas" en la reclamación de dietas y en la aprobación de asistencias.[19]

Por último, en las notificaciones de intención y confirmación de destitución, la ACT imputó a los Querellantes haber fallado en renovar o actualizar la información sobre su residencia privada, y haber completado *Comprobantes de Gastos de Viaje* con

---

[15] *Íd.*, págs. 497, 499 y 506. (Énfasis suprimido.)
[16] A pesar de que ambas notificaciones contienen un lenguaje similar, destacamos la *Confirmación de Destitución,* la cual fue emitida en una etapa posterior y tras la celebración de la vista adjudicativa informal.
[17] Entrada Núm. 5 de SUMAC-TPI, págs. 462, 471-472.
[18] *Íd.*, págs. 465 y 474.
[19] *Íd.*, págs. 481, 486-487.

descripciones de viajes que no coinciden con las de su supervisor.[20] Lo antes, sin precisar cuál disposición reglamentaria violentaron, sin especificar el procedimiento que debieron cumplir y sin correlacionar cuál o cuáles de las infracciones incurrieron con dicho proceder.

A la luz de lo antes expuesto, resolvemos que, las notificaciones de intención y confirmación de destitución objeto de este pleito no cumplen con el debido proceso de ley de los Querellantes. Se cometieron los errores señalados. A tales efectos, devolvemos el presente asunto ante la ACT con el propósito de que dicho foro notifique a los Querellantes, de forma adecuada y puntual, las actuaciones violatorias en las cuales presuntamente incurrieron los Querellantes y las correspondientes infracciones que se derivan de cada una.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* y revocamos el dictamen impugnado. Devolvemos el asunto al foro administrativo para la continuación de los procesos, de conformidad con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[20] A pesar de que el Informe de la Oficial Examinadora consideró lo antes como justificación para recomendar una acción disciplinaria en contra de los Querellantes, el Informe de Auditoría pareció atribuir estas irregularidades a la ineficaz fiscalización por parte de los supervisores.